## Stamp v. Commonwealth.

(Decided June 23, 1922.)

Appeal from Jefferson Circuit Court
(Criminal Division).

1. Criminal Law—Right of Accused to Fair and Impartial Trial.— Among all English speaking peoples there obtains a well-recognized, cardinal rule of law that every individual charged with the commission of a crime or misdemeanor, upon being made to answer therefor, shall be accorded a fair and impartial trial. This requirement also applies in civil actions and proceedings involving the individual's rights of person or property. The rule is declared, in some form, in the constitutions of many of the states composing the American Union, and in that of Kentucky, is found in sections 7, 11, 14 of the Bill of Rights, the provisions for its enforcement being, in part, contained in Ky. Stats., sec. 968.

2. Judges—Bias and Prejudice.—In order to prevent the regular judge of a court from presiding as such on the trial of his case, the defendant in a criminal prosecution, or party to a civil action, must file in such court, as required by Ky. Stats., sec. 968, his affidavit to the effect that the judge "will not afford him a fair and impartial trial, or will not impartially decide an application for a change of venue." The affidavit must, in addition to the above formal statement found in the statute, be supported by a statement of such facts as will conduce to disclose the prejudice, personal hostility, or bias of the judge toward the defendant.

3. Judges—Bias and Prejudice—Affidavits—Disqualification to Act.— The affidavit will be insufficient to procure the vacation of the bench by the judge if it merely states by way of conclusion or opinion the belief of the defendant that he would not afford him a fair and impartial trial, or in like manner decide his application for a change of venue. The facts stated in the affidavit must be such as will show not only that the prejudice, bias or personal

hostility on the part of the judge toward or against the defendant exists, but that it is of a character reasonably calculated to seriously impair his impartiality and sway his judgment; and if such be the showing made, it would disqualify the judge to preside on the trial and should prevent him from doing so.

4. Judges—Bias and Prejudice.—The words "prejudice," "bias" and hostility," refer to the mental attitude or disposition of the judge toward the accused and not to any views he may entertain respecting the crime with which the latter is charged. For a judge's abhorrence of crime will not disqualify him to preside at a criminal trial; nor will he be disqualified by holding an unexpressed opinion as to the guilt or innocence of one on the trial of whose case it is his duty to preside, or because of his having shown a disposition to punish others charged with a like crime.

5. Judges—Bias and Prejudice.—It is the rule in this jurisdiction, as practically in all other jurisdictions, that when the facts are stated in an affidavit seeking to have the judge vacate the bench their truth must be accepted by the latter and cannot be put in issue by him. But it is his duty to determine whether they are sufficient to require him to vacate the bench, and his decision of the question is subject to appeal.

6. Judges—Bias and Prejudice—Disqualification to Act.—As in this case it was made to appear from facts specifically stated in the affidavit of the appellant seeking the judge's vacation of the bench on his trial, that from the commission of the crime with which appellant was charged down to his trial, the judge, both publicly and privately, to newspaper reporters and others, and also in public speeches in aid of his candidacy for re-election as circuit judge, repeatedly announced his belief in the appellant's guilt of the crime charged, in discussing which he declared him guilty of a "horrible murder, which added another to the frightful list of crimes continually occurring in the city of Louisville;" and that he (the judge) was "determined to have this murderer (appellant) tried and convicted before this court adjourns for the summer. . . . . That he did not care whether defendant's counsel was ready for trial or not; and that he would, if necessary, appoint a lawyer and force defendant into trial regardless of whether or not he was ready with such lawyer." Held, that the conduct and declarations of the judge regarding the appellant's guilt of the crime charged, together with his threats to compel his immediate conviction therefor, thus shown by the facts contained in the affidavit of the appellant, established such prejudice and bias on his part toward the appellant as disqualified him to preside on the latter's trial; therefore, his refusal to vacate the bench constitutes reversible error.

CLEM HUGGINS, MERRITT O'NEAL and M. M. LOGAN for appellant.

CHAS. I. DAWSON, Attorney General, and THOMAS B. McGREGOR, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Settle—Reversing.

Under an indictment returned June 3, 1921, by the grand jury of Jefferson county charging him with the crime of murder, the appellant, Walter P. Stamp, was, July 1, 1921, subjected to trial in the Jefferson circuit court, criminal division, which resulted in the return of a verdict by the jury finding him guilty of the crime charged and fixing his punishment at death. Following the overruling of his motion and grounds for a new trial, sentence was pronounced upon the appellant and judgment entered by the court in accordance with the verdict. He prayed and was granted an appeal by the trial court, his prosecution of which brings to us for review the judgment and various rulings of that court complained of.

The person alleged to have been murdered was J. Smith Russell, who, according to the evidence of the Commonwealth, while riding on the night of June 1, 1921, with his wife and child in an automobile on the Third street boulevard, near and south of the corporate limits of the city of Louisville, was instantly killed, his wife wounded and their child attempted to be killed, by a shot or shots fired at each of them from a pistol in the hand of appellant, who was also riding at the time in an automobile which, overtaking that occupied by Russell, his wife and child, ran ahead of and forced it to deflect and strike a tree, at which time the shooting was done. Further evidence in behalf of the Commonwealth conduced to identify appellant as the person who did the shooting, establish a motive therefor and previous threats made by him against both Russell and his wife. Upon the conclusion of the Commonwealth's evidence, the appellant declined to introduce any evidence; and, apparently because of his having been forced into trial by the court, announced, through his counsel, a peremptory refusal to do so.

Although additional grounds were urged by appellant on his motion for a new trial in the court below, only the following were relied on in argument for the reversal sought of the judgment, viz.: Error of the trial court, (1) In the refusal of the judge thereof to vacate the bench. (2) Refusal of the court to grant the appellant a change of venue. (3) In overruling his motion for a continuance. (4) In refusing him a new trial.

The motion of the appellant and affidavit filed in support thereof, seeking to have the judge of the Jefferson

circuit court, criminal division, vacate the bench on and during his trial under the indictment for the murder charged, were based on section 968, Kentucky Statutes, which, as amended by act of March 22, 1902, provides:

"When, from any cause, the judge of the circuit court fails to attend, or being in attendance cannot properly preside in an action, proceeding or prosecution pending in said court, *or if either party shall file with the clerk of the court his affidavit that the judge will not afford him a fair and impartial trial, or will not impartially decide an application for a change of venue,* the parties, by agreement, may elect one of the attorneys of the court to preside on the trial or hear the application, or hold the court for the occasion; and if any of the parties to said action, proceeding or prosecution be or are non-resident defendants, who have not entered their appearance, nor have been summoned, or are infant defendants, the attorney appointed to defend for such non-residents or the guardian *ad litem* for such infants, may agree with the other parties to such action, proceeding or prosecution, upon a lawyer having all the qualifications of a circuit judge to try such action, proceeding or prosecution. (See also Criminal Code, section 52.)

It will be observed from the language of the statute, that in order to obtain the removal from the bench of the judge charged by law with the duty of presiding at his trial, the accused must file an affidavit to the effect that he will not afford him a fair and impartial trial, or rule fairly and impartially upon an application from him for change of venue. In numerous cases construing this statute we have held that the affidavit will be insufficient to procure the vacation of the bench by the judge, if it merely states by way of conclusion, or even in the language of the statute, only the belief of the accused that such judge would not afford him a fair and impartial trial, or in like manner pass on his application for a change of venue. The affidavit must set forth the facts upon which the accused rests his belief that the judge will not give him a fair trial or impartially pass on his application for a change of venue, and thereby disclose the bias or prejudice of mind he apprehends from the latter. In brief, the facts stated in the affidavit must be of a character that will show not only that the bias, prejudice or personal hostility on the part of the judge toward or against the accused exists, but that it is of a character calculated to seriously impair his impartiality

and sway his judgment; and if such be the showing made, it would disqualify the judge to preside on the trial and should prevent him from doing so. Toliver v. Commonwealth, 165 Ky. 312; Sparks v. Colson, 109 Ky. 94; Rush v. Denhard, 138 Ky. 238; McDonald v. Walsend Coal Co., 135 Ky. 624; Massie v. Commonwealth, 93 Ky. 588; Hargis v. Marcum, 31 R. 795; French v. Commonwealth, 30 R. 98; Erwin v. Benton, 27 R. 909; Ky. Journal Co. v. Gaines, 33 R. 402. The words "bias," prejudice" and "hostility" as here used refer, of course, to the mental attitude or disposition of the judge toward the appellant, and not to any views he may entertain respecting the crime with which the latter was charged. For, manifestly, a judge's abhorrence of crime will not be held to disqualify him to preside at a criminal trial; nor will he be disqualified by holding an unexpressed opinion as to the guilt or innocence of one on the trial of whose case it is his duty to preside, or because of his having shown a disposition to punish others charged with a similar crime.

In Chreste v. Commonwealth, 178 Ky. 311, although the opinion deals most elaborately with the question under consideration and reviews the numerous authorities bearing thereon, including those above cited, it does not, as counsel for the Commonwealth seems to think, in declaring what an affidavit seeking to require a judge to vacate the bench should contain, announce a rule differing in any respect from that announced in the cases, *supra,* but is in line with them in holding that an affidavit to be sufficient under section 968, Kentucky Statutes, to require a judge to vacate the bench, must show by reason of bias or prejudice his disqualification to preside on the trial of the case; and that the mere fact that he had made some adverse ruling affecting the defendant and entertained a conviction respecting the principle of law involved in the latter's case, or had shown a disposition to punish others charged with misconduct similar to that for which he was being tried, furnished no cause for his vacating the bench on the defendant's trial.

In a number of the cases, *supra,* and others decided by this court, it was held that when the facts are stated in an affidavit seeking to have the judge vacate the bench, their truth must be acepted by the latter and cannot be put in issue by him; but it is his duty to determine whether they are sufficient to require him to vacate the bench and his decision of the question is subject to appeal. Powers v. Commonwealth, 114 Ky. 237; Rush v.

Denhard, 138 Ky. 238; Vance v. Fields, 89 Ky. 178; Sparks v. Colston, 109 Ky. 711; Chreste v. Commonwealth, 178 Ky. 311.

With the law thus stated and understood, it remains to be determined by an application of its principles to the facts contained in the affidavit of the appellant in support of his motion that the presiding judge vacate the bench on and during his trial, whether they were sufficient to require this court to adjudge that they should have prevented him from so presiding.

The great length of the affidavit renders its insertion in the opinion as a whole impracticable; therefore only such of its contents as are material to the decision of the question presented by the motion it was intended to support will be set forth and considered. Omitting its preliminary formal parts, it substantially states that, beginning immediately after the commission of the crime with which the appellant was charged and continuing down to the time of his trial therefor, the judge of the Jefferson circuit court, criminal division, charged by virtue of his office with the duty of presiding on the appellant's trial under the indictment for the crime, and who did then preside, repeatedly expressed, both privately and publicly, his belief in and opinion of the appellant's guilt of the murder of J. Smith Russell, and had that opinion at the time of the appellant's trial. That the trial judge, prior to the assigning of the appellant's case for trial, in conversation with divers persons talked of the latter in connection with the killing of Russell, severely criticised him and then, and at other times, expressed his hostility to him, which hostility, as further stated, continued and was entertained by the judge at the time of the filing of the affidavit of the appellant to obtain his vacation of the bench. That among other statements repeatedly made by the trial judge publicly and privately, both on and off the bench, prior to the date upon which the prosecution against the appellant was set for trial, were the following:

"That this defendant (appellant) is guilty of horrible murder, the shooting of an innocent woman and the dastardly attempt to assassinate an innocent child. . . . That the crime committed by the defendant (appellant) adds another to the frightful list of crimes that are occurring continually in the city, and that no cessation of such crimes may be expected until prompt action is taken by every officer of the law, including himself; and

that he (the judge) is determined to have this murderer *tried and convicted* before this court adjourns for the summer.''

It also appears from the affidavit that at other times before the trial of the appellant, the judge repeatedly stated to divers persons:

''That he did not care whether defendant's counsel was ready for trial or not, that he would if necessary appoint a lawyer and force defendant into trial regardless of whether or not he was ready with such lawyer.''

It further appears from the affidavit that when J. Smith Russell was killed and the appellant was tried for the homicide, as well as during the time intervening between the happening of those events, the trial judge was a candidate, and the nominee of his party, for re-election to the office of judge of the Jefferson circuit court, criminal division, and engaged in a heated contest with an opponent requiring the application of much of his labor and time to the prosecution of a campaign among the voters of the judicial district in aid of his candidacy, and that it was during this race that he made in addresses to the public, and privately, to newspaper reporters and others, the several foregoing statements expressive of his opinion of the appellant's guilt of the murder of Russell, the atrocious character of the crime and his determination to speedily try and convict the appellant therefor. It is also substantially charged in the affidavit that, following the homicide in question, certain newspapers of the city of Louisville, seizing upon the crime and the name of the appellant as the person charged with its commission as a basis, made bitter attacks upon the criminal division of the Jefferson circuit court and certain practices alleged to obtain therein; and that in order to avoid the force of these attacks and prevent, if possible, his defeat at the election by reason thereof, as well as on account of his hostility to the appellant, the trial judge, by his declarations and conduct mentioned and by acting in co-operation with the newspapers, joined in the attacks made by them upon his own court and created a hostile public sentiment against the appellant, with the object, as charged by the latter, of securing his conviction for the murder of Russell by preventing him from having a fair and impartial trial.

Accepting, as we must, the truth of the facts stated in the appellant's affidavit they, at least, clearly show that the trial judge before the trial of the appellant and

before and while he was under indictment for the murder of Russell, both privately and publicly declared him guilty of the specific murder charged, which he denounced as a "horrible murder," and also guilty of the further crimes of shooting and wounding Mrs. Russell, and making a "dastardly attempt to assassinate" the child of the Russells; and, in addition, later declared his determination to have the appellant tried and convicted for the murder of Russell before the court adjourned for the summer, regardless, too, of whether his counsel was ready for trial or not; and that if necessary he would appoint a lawyer and force appellant into trial whether ready with such lawyer or not. In view of the authorities, which include several decisions of this court, the conclusion is inevitable that the statements and threats of the trial judge referred to clearly were of a character to establish such bias or prejudice on his part toward the appellant as disqualified him to preside on the latter's trial, and should have prevented him from doing so. Evidence of the existence of this bias or prejudice in the mind of the judge toward the appellant down to and on the calling of the case for trial, seems to be furnished by the further facts stated in the affidavit to the effect that the private and public declarations mentioned, or similar ones of the judge, as to the appellant's guilt of the murder and threats as to forcing him into trial, were repeated and continued by him down to the beginning of the trial; and that he did, as threatened, call a special term of court, solely for the trial of appellant, to commence at the beginning of the time allotted to that and all other branches of the Jefferson circuit court as a vacation; and before the case was reached on the docket or called for trial, did, as also threatened, appoint an attorney to defend the appellant, notwithstanding the previous employment by the latter of an attorney of his own selection. In addition, the execution of the further threats of the trial judge to force the appellant into trial and convict him before the court finally adjourned for the summer, is shown by the record of the trial.

Among all English speaking peoples there obtains a well recognized cardinal rule of law that every individual charged with the commission of a crime or misdemeanor shall, upon being made to answer therefor, be accorded a fair and impartial trial. This requirement also applies in civil actions and proceedings involving the individual's right of person or property. The rule is declared

in some form in the constitutions of many of the states composing the American Union, and in that of Kentucky is expressed in sections 7, 11, 14 of the Bill of Rights, the provisions for its enforcement being, in part, contained in section 968, of the statute, *supra*. Time and again courts of last resort throughout the states have given emphasis to the importance of observing this rule as the safest of all means to a proper administration of good government and the just enforcement of its laws. Perhaps the most recent utterance of this court on the subject is contained in the following excerpt from its opinion in Spencer v. Commonwealth, 192 Ky. 232:

"The presumption of one's innocence must be overcome by means of a fair and impartial trial, which the law guarantees to all those accused of breaches of the criminal law, however heinous the offense charged."

Although it may have appeared from the evidence introduced by the Commonwealth, which was all that was heard on the appellant's trial, that he was the slayer of the victim of the homicide, and that the killing was unjustifiable, or even a "horrible murder" as characterized by the trial judge's denunciation thereof in connection with his asseveration of the appellant's guilt of the crime, such evidence of the latter's guilt cannot be relied on by counsel for the Commonwealth in justification of or to excuse the judge's proclamation of his belief in the appellant's guilt of the crime, made in advance of a trial, or his accompanying threats as to his intention to bring the appellant to immediate trial and conviction. The absence of the prejudice and bias attributed to the judge by the affidavit filed to prevent him from presiding on the appellant's trial, cannot be shown by such means. Whether in any case such prejudice or bias as would disqualify the judge, does or does not exist must be determined alone from the facts set forth in the affidavit; and if its existence at the time of the filing of the affidavit be established by the facts stated therein, it will become the duty of the judge to vacate his seat as required by the defendant's motion to that effect, that another, legally selected or appointed for that purpose, may take his place and preside as judge on and during the defendant's trial.

It is insisted for the appellant that the motive of the trial judge in declaring the appellant guilty of the murder of Russell and his purpose to have him speedily tried for and convicted of the crime, by the means detailed in connection with such declarations, was not only to mani-

fest thereby his personal hostility to and prejudice against the appellant, but, also, by appearing to co-operate with the newspapers in their criticism of crime and methods alleged by them to obtain in his court, to promote his candidacy for and re-election as judge by diverting or preventing further attacks by the newspapers upon him and his court. It is, however, unnecessary that we ascertain the motives of the trial judge for the declarations and conduct referred to. If indulged in from either of these motives, or some other, they manifest a mental attitude or disposition of the judge toward the appellant of a character well calculated to seriously impair his impartiality and sway his judgment and thereby disqualify him to preside on the appellant's trial.

This court frequently has manifested its reluctance to reverse a judgment, whether in a criminal prosecution or civil action, because of the refusal of the judge of the trial court to vacate the bench upon the motion and affidavit of the party to such prosecution or action, demanding it; and it will be found that in a large majority of the cases presenting the question, reversals on that ground were refused. The fact that the provisions of the statute, *supra,* have been abused by criminals invoking its aid, cannot justify disregard of the more important fact that the object of the statute is a salutary one highly promotive of justice. Not only must the judges presiding over the courts be honest, unbiased, impartial, disinterested in fact, but it is of the utmost importance that all suspicion to the contrary must be jealously guarded against and if possible be completely eliminated, if we are to give full effect to the dignity of the bench and maintain public confidence in its integrity and usefulness. Hence, when a judge, whether animated by political excitement, indignation of crime, or mere indiscretion, so far forgets himself as to express in public or private, and in advance of the trial at which it is his duty to preside, his belief in the guilt of a person charged with a crime, indulges in denunciation of that person and announces his determination to bring him to immediate trial and cause his conviction of the crime charged, such person, whether guilty or innocent, has the right to invoke the aid of the statute to avoid a trial conducted by such judge, as to do so would afford the only guaranty of a fair and impartial trial. It is a part of the mission of the newspapers to expose and denounce crimes and

those committing them. It is the duty of the judge to enforce the laws against crime, in doing which he must fairly and impartially try the offenders, and refrain from saying or doing anything that would disqualify him to impartially perform that duty.

In Massie v. Commonwealth, 93 Ky. 588, upon a second trial of the defendant for murder, there having been a disagreement of the jury on the first, an affidavit was filed by the latter to require the presiding judge to vacate the bench, it being therein stated he had repeatedly and openly proclaimed the defendant's guilt, saying that his commission of the crime was "the most cold-blooded ever committed;" and had also criticised the jury on a former trial. Upon the facts thus shown we held that the refusal of the judge to vacate the bench was reversible error, as the facts shown by the affidavit made it improper for him to preside, although the record failed to disclose any ruling of the court during the progress of the trial that was prejudicial to the defendant. In the opinion it is said:

"The grounds are sufficient. But, it is said, the record, so far as the judge's rulings are concerned, indicates no hostility or prejudice against the appellant. But that is not the question; for the accused has the right to be tried by a judge that is fair and impartial, and when he has good reasons to believe, supported by facts, that he will not afford him such trial, he should not be compelled to take chances of a trial before that judge in order that the truth of the matter may be developed, which may never be developed, because there are many ways that a partial or prejudiced judge may knife a party that he is trying without it appearing from the record or without his being able to ascertain the fact. So, when the fact is made to appear, by proper affidavits, the judge should then vacate, and it is a reversible error if he does not."

The other authorities previously cited fully sustain the rule announced in the Massie case. In the instant case the grounds presented by the affidavit furnish stronger reasons than in that case for the vacation of the bench by the judge; and the conclusion cannot be escaped that his refusal to do so will compel a reversal of the judgment.

Other grounds urged for reversal need not be considered, as the errors complained of will hardly occur on another trial. For the reasons indicated the judgment is

reversed for a new trial and other proceedings not inconsistent with this opinion.

The whole court sitting.