408 A.2d 601.

STATE *vs.* MARCO D. NORDSTROM *et al.*

NOVEMBER 21, 1979.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J.    This case comes before us on appeal from judgments of the Superior Court wherein the four defendants were found guilty of conspiracy to assault with a dangerous weapon and assault with a dangerous weapon; three of the defendants were also found guilty of carrying a concealed weapon, and two of these three were found guilty of assault with intent to murder. All charges arose out of a series of brutal assaults and batteries allegedly committed by the various defendants upon a number of patrons of an establishment known as the Narragansett Cafe in the city of Newport.

The facts in the case were vigorously disputed, particularly those elements relating to a conspiracy and the specific parts played by individual defendants in regard to the various assaults and batteries with dangerous weapons. On appeal

defendants raise a number of issues. In view of our response to one of these issues, it will be unnecessary to reach or discuss the other points raised.

The record establishes that on January 21, 1977, after the state had rested its case against defendants but before the presentation of defense testimony had begun, a conversation took place between the trial justice and an attorney for one of the defendants. During the course of this conversation, the trial justice referred to defendants as "bad bastards." This comment was probably precipitated by counsel's having stated to the trial justice that he should have had his head examined for getting into this case. The trial justice and counsel were old friends, and the conversation was believed by the trial justice to be a private and confidential communication.

Thereafter, however, the attorney placed this conversation on the record and moved that the trial justice declare a mistrial and that he disqualify himself from further participation in the case.[1] Both motions were denied. The trial justice negated any bias on his part but agreed that the remark was an unfortunate one which would never have been uttered save for counsel's opening the conversation in the way that he did.

Later, on March 29, 1977, after defendants had been sentenced, the trial justice read a written statement into the record setting forth in further detail his reaction to the conversation between himself and counsel. Counsel and the trial justice throughout the controversy on this issue were in substantial agreement regarding the contents of the conversation of January 21, 1977, and the events that led up to the trial justice's characterization of defendants.

---

[1] It was understood during the trial that any motion made by one defendant would inure to the benefit of all.

In *State* v. *Nunes*, 99 R.I. 1, 5, 205 A.2d 24, 27 (1964), this court quoted with approval a statement from *Stamp* v. *Commonwealth*, 195 Ky. 404, 413, 243 S.W. 27, 31 (1922):

> "Not only must the judges presiding over the courts be honest, unbiased, impartial, disinterested in fact, but it is of the utmost importance that all suspicion to the contrary must be jealously guarded against and if possible be completely eliminated, if we are to give full effect to the dignity of the bench and maintain public confidence in its integrity and usefulness."

In *Nunes, supra,* although the record failed to disclose any court ruling that was inherently unfair or hostile to the defendant, language uttered by the trial justice in passing on a motion to revoke bail was such as to negate the required impartiality, apparent as well as real.

In the case at bar, the trial justice is an experienced and outstanding member of the bench. The attorney who raised this issue is an eminent member of the bar. Both agonized over the comment but reached different conclusions as to its import.

We are of the opinion that the defendants have met the burden of proof of prejudice laid down in *State v. Nunes, supra.* Although the evidence submitted during the course of the state's presentation would warrant a person of ordinary sensibilities to be horrified at the conduct ascribed to the various defendants by prosecution witnesses, it is a familiar principle that judicial officers must keep their minds open until the entire case is concluded and arguments of counsel have been heard. This duty often runs counter to natural human reaction. Nevertheless, it is required in order to vindicate our system of criminal adjudication. We are thus constrained to conclude that the defendants were entitled to the granting of their motion for mistrial under the circumstances of this case.

For the foregoing reasons, the defendants' appeals are sustained, the judgments of conviction are vacated, and the

case is remanded to the Superior Court for a new trial.

*Dennis J. Roberts II*, Attorney General, *Frederick Cass*, Special Assistant Attorney General, for plaintiff.

*James M. Shannahan, John F. Cicilline, John A. O'Neill, Jr., Joseph L. DeCaporale, Jr., Robert A. Shuman, Joseph T. Trainor*, for defendants.