STATE

v.

**Gary Paul COLE.**

**No. 84–468–C.A.**

Supreme Court of Rhode Island.

Nov. 22, 1985.

Reargument Denied Dec. 20, 1985.

---

**532**

Arlene Violet, Atty. Gen., Thomas Dickinson, Constance Messore, Spec. Asst. Attys. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

KELLEHER, Justice.

A Superior Court jury has found the defendant guilty of having committed first-degree sexual assault and simple assault, as well as having possession of marijuana. He is before us on a three-facet appeal in which he faults the trial justice for (1) admitting into evidence certain out-of-court utterances made by the victim relative to the sexual-assault episode, (2) refusing to sever the assault counts from the possessory offense, and (3) denying his motion to dismiss the indictment pursuant to what was Rule 48(b) of the Superior Court Rules of Criminal Procedure for the state's unwarranted delay in bringing his case to prosecution.

The sixteen-year-old victim testified that in the very early morning hours of May 23, 1982, she had a fight with her boyfriend in an East Greenwich parking lot and decided to thumb a ride home. She was picked up by defendant. After a two-hour ride around various parts of East Greenwich, the couple ended up in West Greenwich in a deserted sand-dune area. When the victim tried to run away from the area, she was grabbed and struck and her sweater and bra were ripped off her body. She was pushed to the ground, where defendant pressed his penis in the teenager's mouth and entered her vaginal area with his finger. The defendant, who had been lying across the victim, then arose and turned his back. At that moment the teenager ran to the top of the dunes, where she hid.

In time the victim left the dunes and headed to nearby Interstate Route 95. There, a passing motorist stopped, provided the teenager with a raincoat, and proceeded to a police station. The motorist told the jury that he had found his passenger naked, hysterical, and bruised. Later, the police returned to the sand-dune area and found defendant asleep in his car. At trial, defendant insisted that the entire episode had been a consensual event. He also admitted possession of marijuana.

At trial, near the conclusion of the victim's direct examination, she was asked what had occurred while she was at the police station. She replied, "Um, they asked me if I was raped, and I said no." She then explained that rape, to her, was sexual intercourse, and that had not happened.

Subsequently, one of the arresting officers testified. When questioned about whether he had asked the teenager if she had been raped, he responded, "Yes, I did," and her response to him was, "No." When the officer was asked if the teenager had said anything else regarding the incident, he responded by referring to the fondling, digital penetration, and penile entry into the victim's mouth. This latter response, according to defendant, constituted prejudicial, reversible hearsay. We disagree.

We shall assume that the officer's repetition of the fondling and other such episodes does not fall within any of the recognized exceptions to the rule barring the use of hearsay evidence. However, we are convinced that this testimony was not prejudicial to defendant's cause. It is obvi-

ous that when the teenager was asked about a rape, she responded in terms of the common law, totally unaware that the Legislature, at its January 1979 annual session, had expanded upon the term "sexual penetration" by force to include, in addition to sexual intercourse, "cunnilingus, fellatio, and anal intercourse, or any other intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings of another person's body." Public Laws 1979, ch. 302, § 2. *See State v. Babbitt,* —— R.I. ——, ——, 457 A.2d 1049, 1054 (1983).

The disputed portion of the officer's testimony merely repeats what defendant concedes. He admitted to the fondling, fingering, and oral sex but disputes the state's contention that he forced the teenager to engage in such activities. The officer's repetition of what he was told concerning these actions did nothing more than establish the fact that defendant and the teenager had engaged in sexual conduct, a fact with which neither the prosecution nor the defense takes issue.

■ Motions to sever counts in a criminal proceeding are directed at the discretion of the trial justice. The mere possibility of prejudice does not in itself warrant a severance. This court has consistently held that the denial of a motion for severance does not constitute a ground for reversal unless it is affirmatively shown that the defendant did in fact suffer substantial prejudice that impinged upon his right to a fair trial. *State v. Whitman,* —— R.I. ——, ——, 431 A.2d 1229, 1233 (1981); *State v. Sharbuno,* 120 R.I. 714, 717, 390 A.2d 915, 917–18 (1978); *State v. Patriarca,* 112 R.I. 14, 28, 308 A.2d 300, 310 (1973).

Here, the trial justice, in rejecting the motion for severance, found that defendant failed to show substantial prejudice from a joinder of the marijuana count. In fact, it was the defense that directed the jury's attention to the marijuana issue both when defendant testified that he had offered the teenager marijuana and when the defense cross-examined her concerning defendant's offer of the marijuana. On this record we cannot fault the trial justice's denial of the motion to sever.

■ Considering defendant's efforts to seek dismissal of the indictment lodged against him because of the state's alleged undue delay in bringing the case to trial, we would stress that defendant has the initial burden of showing that none of the delay was attributable to his actions. *State v. Brown,* —— R.I. ——, ——, 486 A.2d 595, 601–02 (1985). The record indicates that when the case came on to be heard on April 18, 1983, before a trial justice who had remarked that it appeared that the case was going to begin, defendant's counsel was asked, "Is the defendant ready?" Although the response was in the negative, the trial justice marked the case ready. Later in the day the case was continued to May 2, 1983, on defense counsel's representation that he was not ready to try the case.

Dismissal of an indictment for noncompliance with the undue-delay provisions of Super.R.Crim.P. 48(b) is a drastic step. Since the defense has not sustained its initial burden, the denial of the motion to dismiss for undue delay is affirmed.

The defendant's appeal is denied and dismissed, and the judgment of conviction appealed from is affirmed.

BEVILACQUA, C.J., did not participate.