**STATE**

v.

**Francisco BORGES.**

**No. 85–433–C.A.**

Supreme Court of Rhode Island.

Dec. 30, 1986.

Arlene Violet, Atty. Gen., Thomas Dickinson, Jane M. McSoley, Sp. Asst. Attys. Gen., for plaintiff.

William F. Reilly, Public Defender, Barbara Hurst, Janice Weisfeld, Asst. Public Defenders, for defendant.

## OPINION

KELLEHER, Justice.

On October 20, 1982, a criminal information was filed in the Providence County Superior Court charging the defendant, Francisco Borges, with two counts of assault with intent to rob and one count of simple assault. The assault occurred near the Providence Civic Center on the evening of August 28, 1982, when a gang of toughs attacked a group of individuals who had attended a concert at the center given by a musical group appropriately named, on the facts of this case, The Clash. Subsequently, in March 1985 a Superior Court jury returned guilty verdicts on all three counts. Before us the defendant faults the trial justice for (1) his refusal to dismiss the charges because of an alleged failure on the part of the state to afford the defendant a speedy trial and (2) his insistence that the presentation of evidence concerning the assaults be given even though the defendant was absent from the courtroom at that time. Hereafter we shall refer to the defendant by his last name.

Although Borges, in his speedy-trial motion, alluded to the guarantees found in both the United States and Rhode Island Constitutions, most of his emphasis before the trial justice was on Rule 48(b) of the Superior Court Rules of Criminal Procedure, which authorizes the dismissal of a criminal case for "unnecessary delay." Borges's motion was filed on March 20, 1985. However, Rule 48(b) had been repealed in late November 1984. He acknowledges the repeal but claims any judicial interference with his reliance on Rule 48(b) runs afoul of the constitutional bar against the enactment of ex post facto legislation.

General Laws 1956 (1985 Reenactment) § 8-6-2 authorizes the various courts of this state to promulgate rules regulating the "practice, procedure and business therein." The statute goes on to say that the rules promulgated shall have as their goal a simplified system of "pleading, practice and procedure" that will promote a "speedy determination of litigation on the merits." The justices of the Superior Court in repealing Rule 48(b) were obviously of the belief that the application of the rule was not effectuating a speedy determination of criminal cases on their merits. One incident that unquestionably motivated the repeal is the case *State v. Dionne*, 442 A.2d 876 (R.I.1982), in which the defendant's conviction for driving so as to endanger, death resulting, was affirmed but the case was remanded to the Superior Court for reconsideration of Dionne's Rule 48(b) motion. After remand a Superior Court justice dismissed the information because of the prosecution's unnecessary delay in bringing Dionne to trial, and this dismissal was affirmed in *State v. Dionne*, 474 A.2d 445 (R.I.1984).

In order to consider Borges's argument on the repeal of Rule 48(b) properly, we should first define the meaning of ex post facto law. Essentially, it is an enactment, criminal or penal in nature, which is retrospective and disadvantageous to the offender affected by it such as the passage of a law that makes an act criminal that was not criminal at the time it was performed. Long ago in *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798), Mr. Justice Chase, in categorizing the actions proscribed by the ex post facto clause, included:

> "Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in

order to convict the offender." *Id.* at 390, 1 L.Ed. at 650.

 Recently, in *Lerner v. Gill,* 751 F.2d 450, 454 (1st Cir.1985), we were reminded that the ex post facto clause has as one of its principal targets the passage of any law that would change the punishment or inflict greater punishment than whatever was in effect at the time the crime was committed. The main purpose of this prohibition is to guarantee that legislative acts shall give fair warning of their effect and permit individuals to rely on the meaning of the laws until they are explicitly changed. Earlier in *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344, 356 (1977), the Supreme Court observed that "[e]ven though [a procedural change] may work to the disadvantage of a defendant, [such a change] is not ex post facto." A procedural change, although retrospective in application, has been held not to be violative of the ex post facto bar if it does "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." *Weaver v. Graham,* 450 U.S. 24, 29 n. 12, 101 S.Ct. 960, 964 n. 12, 67 L.Ed.2d 17, 23 n. 12 (1981) (quoting *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262, 269 (1884)). This principle has been applied in different situations; for example, *Dobbert v. Florida, supra,* where retrospective application of an amended capital sentencing procedure permitting judicial review of a jury determination on sentencing withstood a constitutional challenge; *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), where a change in the mode of criminal trials allowing joint trials for codefendants instead of separate trials provided by prior law was approved; and *Hopt v. Utah, supra,* where a statutory enlargement in the class of competent witnesses to include convicted felons was not ex post facto. Admittedly, the mere description of a change as "procedural" does not insulate that change from the ex post facto prohibition. Again, the Court in *Weaver* acknowledged that the prohibition against ex post facto enactments may not

be avoided simply by calling a change procedural, stressed that the bar only applied to the "alteration of a substantial right," *Weaver,* 450 U.S. at 29 n. 12, 101 S.Ct. at 964 n. 12, 67 L.Ed.2d at 23 n. 12, and described the critical focus in any ex post facto dispute as being whether the law changes the legal consequences of acts completed before the law's effective date. At this time, we shall give a brief recitation to what has transpired in this jurisdiction since the Superior Court adopted its rules of criminal procedure.

 The Superior Court Rules of Criminal Procedure became effective on September 1, 1972. Rule 48(b) was first encountered in *State v. Grover,* 112 R.I. 649, 314 A.2d 138 (1974), where it was noted that the rule gave a trial justice "wider latitude" in considering a motion to dismiss than when the dismissal motion was based upon an alleged violation of the constitutional guarantee of a speedy trial. The broader scope of the rule came about because there was no necessity that the moving party demonstrate either prejudice as a result of the delay or an assertion of the right to speedy trial. *State v. Brown,* 486 A.2d 595 (R.I.1985). However, an accused who sought to benefit from the rule was required to prove that none of the delay was attributable to the accused. *State v. Cole,* 500 A.2d 531 (R.I.1985). Once the accused has demonstrated blamelessness, the state then assumed the task of proving that the delay was necessary. *State v. Isaac,* 477 A.2d 62 (R.I.1984). Rule 48(b) is considered to be merely declaratory of the court's inherent power to dismiss a criminal proceeding for want of prosecution. *State v. Dionne,* 474 A.2d 445 (R.I.1984).

 The 1982 repeal of Rule 48(b) violates neither the federal nor the state constitutional prohibitions against ex post facto laws. The repeal did not make criminal an act that was innocent when done; it did not increase the punishment for a previous offense, and it did not alter the legal rules

of evidence in order to convict a defendant, nor did the new provision deprive Borges of any substantial right that was his on August 28, 1982, when he first encountered the three witnesses who subsequently testified at his March 1985 trial and described him as the individual who had assaulted them.

In addition, we subscribe to the following sentiments expressed in *United States v. Molt,* 758 F.2d 1198, 1200 (7th Cir.1985), where an ex post facto challenge was made to the application of a new standard for granting postconviction bail to an individual whose conviction occurred prior to the effective date of the new standard. "It would be odd to think that by committing a crime, a person acquired an indefeasible right to be tried for it in a particular way, or that in deciding whether to commit a crime the prospective criminal will have regard to the particulars of the procedures for the trial and appeal of criminal cases." *Id.*

We have no doubt that the impact of the repeal of Rule 48(b) never crossed Borges's mind as The Clash concert concluded and the concert goers left the premises. In fact at that time what Borges had at most was a mere expectancy that sometime in the indeterminate future, circumstances could possibly evolve wherein he could invoke Rule 48(b). However, the deprivation of this procedural expectancy does not fall within the reach of the ex post facto clause. Similar sentiments to those expressed here may be found in *People v. Anderson,* 53 Ill.2d 437, 292 N.E.2d 364 (1973); also *Wade v. State,* 572 S.W.2d 533 (Tex.Crim. App.1978), where the time limits of speedy-trial acts were extended and applied against the defendants who had been charged prior to the statutory increase in the limits.

Borges's claim that his constitutional right to a speedy trial was violated merits little discussion. In our opinion, he has not come close to satisfying the criteria set forth in either *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), or *Tate v. Howard,* 110 R.I. 641, 296 A.2d 19 (1972).

The final phase of Borges's appeal concerns his claim that the trial justice's decision to proceed with the trial when Borges was absent violated his constitutional right to be present at all stages of such a trial.

The record indicates that Borges, a resident of Fall River, Massachusetts, was present in court on Wednesday, March 20, 1985 while the case was awaiting assignment to an available trial justice and again on Thursday, March 21, when the trial justice considered Borges's Rule 48(b) motion. He was excused when the trial justice began to consider the motions to suppress pretrial and in-court identifications made earlier by the prosecution's witnesses; however, it was indicated that he would be present when one of the assault victims appeared to testify. Borges was a "no show" on Friday, March 22. The prosecution then sought some assurance that Borges would be present on Monday, March 25. Borges's counsel informed the trial justice that she had spoken to Borges's wife that morning. According to the wife, Borges had left the house at 9:30 a.m., stating that his destination was the Providence County Courthouse. Borges's counsel also told the court that she had spoken to Borges and that their conversation left her with the impression that Borges would be in court on Monday morning, March 25. Borges did not appear as promised, and the trial justice then issued a bench warrant for his arrest. The trial proceedings were recessed until the following morning. On Tuesday morning, March 26, the trial justice was informed that attempts by the Fall River police to locate Borges had proved fruitless. Borges's counsel again reported that Mrs. Borges had no idea of her husband's whereabouts. The trial justice, at the suggestion of the prosecution, granted a motion for forfeiture of bail. He was informed by a Providence police officer that a telephonic survey of major hospitals in the Providence

and Fall River areas did not uncover any evidence that Borges had been a patient in any of the institutions. At this point, the state announced that it was ready to proceed with trial. Defense counsel objected. The trial justice, in ruling that Borges's absence was voluntary, emphasized that Providence and Fall River are but a mere twenty miles apart and are linked by busy interstate highway Route 195. He thought that if Borges had encountered such an obstacle to attendance as running off the highway on the way to or from the court, news of such an event would have appeared in the media. Of course there was no such news. At this juncture, the trial justice ruled on the then-pending preliminary motions and adjourned court for the day, observing that he wished to give Borges every opportunity to be present at the impaneling of the jury. When Borges failed to appear on Wednesday, March 27, the jury was selected and sworn. The trial continued that day. At that time the prosecution began its presentation of evidence relating to guilt. The presentation concluded on March 29, when the jury returned its guilty verdicts.

Borges was arrested by Fall River police as a fugitive from justice and returned to the Superior Court on April 2, 1985, when the trial justice inquired of Borges the reasons for his absence. Borges acknowledged his obligation to be present during the suppression hearings so the witnesses could make an identification but offered no further comments invoking his constitutional protection against self-incrimination.

There is no reason to further prolong this opinion. In *State v. Holland,* 430 A.2d 1263 (R.I.1981), and *State v. Brown,* 121 R.I. 422, 399 A.2d 1222 (1979), this court emphasized that an accused can waive his constitutional right to be present at trial when the absence is deemed voluntary. Before making such a determination, a trial justice is obligated to make such inquiry into the circumstances of a defendant's absence as would justify a finding that absence was voluntary; and if such finding is made, the trial justice is required to afford a defendant, upon his return to custody and before the imposition of sentence, an adequate opportunity to explain his absence. Here it is clear that the trial justice has scrupulously complied with the mandates set forth above.

Borges's appeal is denied and dismissed, the judgments of conviction are affirmed, and the case is remanded to the Superior Court.