STATE

v.

Carl NORDSTROM.

No. 86–253–C.A.

Supreme Court of Rhode Island.

July 6, 1987.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Asst. Atty. Gen., Providence, for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

SHEA, Justice.

This case comes before us for the second time. Following this court's reversal of the defendant's conviction in *State v. Nordstrom*, 122 R.I. 412, 408 A.2d 601 (1979), a second trial was held in which a jury convicted Carl Nordstrom (defendant) of one count of conspiracy and two counts of assault with a dangerous weapon. The jury

returned not-guilty verdicts on several additional counts. We affirm.

The record in this case establishes that on February 15, 1976, several members of the Grimes family attended their father's wedding at Salve Regina College in Newport, Rhode Island. The wedding reception was held at Christie's Restaurant and lasted into the late-evening hours. After the reception some of the celebrants went to the Narragansett Cafe in Newport. Many people who had attended the wedding were distributed throughout the bar. Shortly after midnight, a group of five men entered. These men dispersed throughout the bar, and at one point one of them placed his arms around Steve Grimes's wife, Jeanne. When Steve and Gregory Grimes came to Jeanne's side, Gregory was struck in the face. A general melee that included defendant ensued in which Gregory Grimes was struck with a pool cue and his face was slashed. Medical testimony was also presented about the injuries suffered by other members of the Grimes-wedding party. Matthew Grimes suffered a serious stab wound to the chest that required extensive emergency surgery.

A summary of the procedural travel of this case, although lengthy and punctuated by numerous motions, is necessary to our review of the appeal before us.

The Superior Court record establishes that following this court's reversal of defendant's conviction on November 21, 1979, the retrial was scheduled for a pretrial conference on April 6, 1982. The defendant failed to appear, and a warrant was issued. This warrant was subsequently recalled on May 26, 1982. A Superior Court entry on June 2, 1982, notes that a warrant was requested but was recalled and canceled.

On September 2, 1982, defendant filed a motion for a speedy trial. According to defendant, on April 26, 1984, defendant moved to dismiss pursuant to Rule 48 of the Superior Court Rules of Criminal Procedures as well as on constitutional grounds. On August 16, 1984, that motion was denied in a written opinion. On August 30, 1984, defendant filed a petition with this court, alleging a speedy-trial violation that was denied without opinion.

On September 10, 1984 the case was again on the trial calendar and defendant did not appear. When the case was called for trial on February 25, 1985, defendant once again failed to appear.

The defendant refashioned his motion to dismiss for lack of speedy trial on April 11, 1985, and May 7, 1985, basing it on constitutional grounds. The case was reached for trial in Newport in May of 1985. Jury selection began on May 13. On May 14 defense counsel was unavailable. On May 15 defendant filed a motion to pass the case because of an article that appeared in a local newspaper. The trial justice granted this motion, and the case was transferred to Providence for trial. The trial began in late June and lasted for approximately three weeks. The defendant, during pretrial proceedings, reasserted his motion and sought dismissal on speedy-trial grounds that the trial justice denied.

On appeal defendant alleges that two justices of the Superior Court erred in failing to dismiss the information pursuant to Rule 48(b), as well as on state and federal constitutional grounds. Rule 48(b) has been repealed since the information was brought. In a written opinion filed on August 16, 1984, defendant's Rule 48(b) motion to dismiss was denied. The trial justice found that the delay in bringing the case to trial resulted from the unavailability of a codefendant. He found that a trial in this case would likely last several weeks and that joint trials would therefore be preferable. The trial justice noted that defendant had never requested a separate trial and therefore one could reasonably infer that defendant acquiesced in the delay. He added that the complexity of the case, given the number of witnesses called in the first trial and the expected length of the second trial, further justified the delay.

"The Sixth Amendment to the United States Constitution and art. I, sec. 10 of the Rhode Island Constitution guarantee to a criminal defendant the right to a speedy trial. Rule 48(b) was designed to implement that right." *State v. Isaac*, 477 A.2d

62, 64 (R.I. 1984). This court has noted that the statutory right conferred by Rule 48(b) is actually far broader in scope than the constitutional basis from which it springs. *Id.* Indeed, Rule 48(b) "places a greater burden on the prosecution to bring a defendant to trial with a minimum of delay, and permits dismissal of an indictment even though there has been no constitutional violation." *State v. Paquette,* 117 R.I. 505, 511, 368 A.2d 566, 569 (1977).

■ In his written opinion below the trial justice correctly noted that under the rule, a defendant need only demonstrate that he was not responsible for any of the delay in question; a presumption of unnecessary delay is then raised. The burden then shifts to the state to rebut this presumption by showing justification for the delay. *Id.* This court has repeatedly stressed that because "[a] motion under this rule is addressed to the sound discretion of the court, * * * the trial justice's ruling will be set aside only where it is a clear abuse of discretion." *Id.*

The trial justice who heard defendant's motion found that "upon a review of the record, this court is satisfied that defendant did not contribute to the delay." Hence the state must justify the delay in order to avoid dismissal. The defendant faults the trial justice's conclusions and, in particular, his application of *State v. Anthony,* 448 A.2d 744 (R.I. 1982). In *Anthony* codefendant DePari claimed that delays attributable to Anthony were not attributable to him. DePari had moved to sever his case to avoid the consequences of Anthony's delays. This court held that given DePari's aggressive attempts to separate himself from Anthony's delays, those delays could not be attributed to DePari. The court stated that the delays arose "from Anthony's situation and are not attributable to DePari merely as a codefendant in the absence of some evidence that he acquiesced in or contributed to these delays." *Id.* at 748.

■ The trial justice stated that defendant in the case before us never moved to sever, nor did he take any action that tended to show that he objected to any delay

caused by his codefendants. We find that the trial justice's inference that on these facts defendant acquiesced in the delay attributable to the codefendant was not a clear abuse of discretion.

This court has held that delays attributable to joinder are sometimes necessary in order to avoid duplicative trials. *State v. Brown,* 486 A.2d 595, 602 (R.I. 1985). Moreover, "[a]s a general rule, persons jointly indicted as alleged conspirators and the substantive acts they have allegedly committed should be tried together since separate trials on the conspiracy and substantive offenses, respectively, would necessarily involve the repetitive use of the same evidence and facts." *Id.* For this reason in *State v. Isaac,* 477 A.2d at 65, we stated that "[t]he delay occasioned by the state's refusal to sever the case * * * was also necessary."

In the case before us the trial justice determined that the delay was necessary. He noted that much of the delay here hinged on the complexity of the case, including presentation of thirty-one witnesses in the first trial, the expected length of the trial, and most importantly, the unavailability of codefendant Marco Nordstrom. We are not prepared to state that the trial justice, whose firsthand familiarity with the facts and circumstances surrounding the procedural history of this case is entitled to great deference, abused his discretion in finding the delay justified and necessary. Accordingly, we conclude that the trial justice's denial of defendant's Rule 48(b) motion to dismiss did not amount to a clear abuse of discretion.

■ After the denial of his motion for a speedy trial in June of 1984, defendant's case again was presented for trial in June of 1985. The defendant reasserted his speedy-trial claim. The trial justice then sitting also denied defendant's Rule 48(b) motion. When the trial justice ruled in June of 1985, Rule 48(b) had already been repealed and the rule therefore could not form the basis for a proper dismissal. As this court recently held in *State v. Borges,* 519 A.2d 574 (R.I. 1986), the repeal of Rule 48(b) became effective in November 1984.

In *Borges* this court held the application of the repeal to cases that were pending was not violative of the ex post facto clause.[1] Thus, in *Borges* we affirmed a Superior Court justice who refused to apply the rule's remedy after its repeal. *Borges* was decided in 1986 and was therefore unavailable to the trial justice when he ruled on defendant's Rule 48(b) motion. Nevertheless we are able to apply the *Borges* rationale to the case before us. Consequently, because Rule 48(b) was repealed by the time the June 1985 motion was heard, that rule no longer forms a viable basis for defendant's claim.

The defendant also asserts a violation of his right to a speedy trial based directly on constitutional grounds. U.S. Constitution, Amendment VI; R.I. Constitution, art. I, § 10. The defendant was heard twice on this motion and concedes that there was insufficient prejudice to him in June of 1984 to require dismissal. However, defendant contends that sufficient evidence existed at the time of the June 21, 1985 pretrial hearing to establish the requisite prejudice. We disagree.

The test for determining whether an accused has been denied his constitutional right to a speedy trial has been set out in *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State v. Macaskill*, 523 A.2d 883 (R.I. 1987). In *Barker* the United States Supreme Court identified a four-part analysis that courts should use in determining whether a particular defendant has been deprived of a speedy trial. The four factors are (1) length of the delay, (2) reason for the delay, (3) the defendant's assertion of the right, and (4) prejudice to the defendant. *Id.* 407 U.S. at 530, 92 S. Ct. at 2192, 33 L. Ed. 2d at 117. Accordingly, we shall analyze defendant's claim in light of these four factors.

The trial justice then sitting concluded that the delay between August 1984 and June 1985 was not sufficient to require a dismissal of the case. Specifically, the trial

justice found that the case had been ready to proceed in May of 1985 but that a series of short continuances resulted from "the situation presented by a single Judge [sic] in the county, who can only take one trial at a time."

*The Length of the Delay.* In *Barker* the Court held that the length of the delay is a triggering mechanism; if it is long enough to be considered "presumptively prejudicial," the remaining three factors will be examined. *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192, 33 L.Ed. 2d at 117. The trial justice who first heard the motion in June of 1984 found that the length of the delay of over four years was presumptively prejudicial and went on to examine the case under the three remaining criteria. However the trial justice who heard the second motion ten months later considered only that period between the denial of his motion in 1984 and its rehearing in 1985. He concluded that this additional delay was a "relatively short period" and was "not so inordinate as to require, again, an inquiry into the other aspects of the constitutional test."

■ The defendant contends that the trial justice erred by considering only that period between the denial of his motion in 1984 and the rehearing in 1985. We agree. The trial justice at the hearing on the second motion should have considered both the intervening period between August of 1984 and June of 1985 as well as the cumulative delay of fifty-seven months in his analysis using the *Barker* test. Because the trial justice did not consider the length of the delay sufficiently prejudicial, he did not consider the three remaining factors under *Barker*.

■ This court on appeal is free to affirm a ruling on grounds other than those stated by the lower-court judge. *State v. Ibbison*, 448 A.2d 728, 733 (R.I. 1982). This principle of appellate review was clearly enunciated by the United States Supreme

---

1. In *State v. Pine*, 524 A.2d 1104, 1108 (R.I. 1987), we noted that "[a]lthough the ex post facto prohibition applies to legislation only, it has been held that the due-process clause prevents the accomplishment by judicial construction of that which is not permitted by statute." *See Marks v. United States*, 430 U.S. 188, 191–92, 97 S. Ct. 990, 992, 51 L. Ed.2d 260, 265 (1977).

Court nearly a half-century ago in Justice Brandeis's opinion in *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S. Ct. 154, 158, 82 L. Ed. 224, 230 (1937)(if lower-court decision is correct, appellate court will affirm even if lower-court judge gave wrong ground or wrong reason). Relying on our analysis of the speedy-trial claim in this case, we affirm the result reached by the trial justice in June 1985 for reasons other than those stated. We also hold that he ought to have found the entire period of defendant's delay sufficiently prejudicial to trigger consideration of the remaining factors in the *Barker* analysis.

*Reason for the Delay.* Three important factors form the reason for the delay in this case. First, the unavailability of a codefendant prevented this case from going forward. The trial justice, as we noted above, found that because defendant never sought severance, he acquiesced in the delay attributable to the codefendant. This court has recognized that the state has a substantial interest in joint trials of multiple defendants and counts. *State v. Brown,* 486 A.2d at 602. In this case no evidence exists that defendant sought to distance himself from the delays attributable to a codefendant.

The second reason for the delay was the limited capacity of the Newport Superior Court to handle criminal cases. When he denied defendant's speedy-trial claim, the trial justice noted that only one case can be tried at a time in Newport because only one justice is available.

■ This court has consistently stated that court congestion does not constitute necessary delay. *State v. Dionne,* 474 A.2d 445, 448 (R.I. 1984). Hence the delay in the case as a result of court congestion in Newport must be weighed against the state. *Id.* However, court-congestion delay, although ultimately attributable to the state, is not tactically motivated and is therefore weighed less heavily in the balance. *Barker v. Wingo,* 407 U.S. at 531, 92 S. Ct. at 2192, 33 L. Ed. 2d at 117; *State v. Macaskill,* 523 A.2d at 885.

■ Finally, on one occasion the case was passed for trial at defendant's request,

owing to the defendant's fear of improper publicity. The state correctly points out that this delay was for the benefit of defendant and should weigh against his speedy-trial claim.

*The Defendant's Assertion of the Right.* The trial justice at the first hearing specifically found that defendant did not actively pursue his speedy-trial claim. The trial justice noted that defendant asserted his right on only one occasion, very late in the proceedings. No motion to dismiss was filed for twenty months and then only on the eve of trial. The trial justice concluded that defendant's conduct "evidences an acquiescence in the delay."

In *State v. Macaskill* 523 A.2d at 885, we noted that neither defendant was "figuratively banging on the courthouse doors asking that he be heard" (quoting *Tate v. Howard,* 110 R.I. 641, 656, 296 A.2d 19, 27 (1972)). Likewise it cannot be said that defendant here showed an aggressive assertion of his right to a speedy trial.

*Prejudice to the Defendant.* The defendant claims that the delay prejudiced him in that it rendered three witnesses unavailable for his defense. Specifically, defendant alleges that Donna Lord, Benjamin Reynolds and retired police captain Paul Sullivan of the Newport police department became unavailable because of the delay. We disagree.

First, Captain Sullivan was available at trial and did testify in the defense case. Second, the testimony of Mr. Reynolds was available from a previous trial, and the trial justice permitted defendant to present both direct and cross-examination from the prior trial before the jury. The defendant attempted to establish, through the testimony of a constable, that these witnesses were unavailable for trial. The trial justice found the constable's efforts meager and concluded that the witnesses were not, in fact, unavailable.

During the trial, defendant renewed his effort to persuade the trial justice of Ms. Lord's unavailability. However, defense counsel admitted that at the time of the original speedy-trial hearing, he had not

made any efforts to locate her. Ms. Lord apparently would testify that she saw a fight break out but saw no knives being used. The trial justice noted that defense counsel apparently had never interviewed Ms. Lord in connection with either the first trial or retrial and concluded that the mere passage of time was not responsible for Ms. Lord's unavailability. Consequently, we find that defendant was not prejudiced by the delay between the reversal of his first conviction and his retrial.

■ Relying on the foregoing examination of the four *Barker* factors, we are of the opinion that neither trial justice was in error in refusing to dismiss defendant's case on speedy-trial grounds.

Gregory Grimes, who had been injured in the bar fight, testified as a state's witness. He made an in-court identification of defendant. Shortly after the barroom fight, he was shown a set of photographs and asked if he could identify the attackers. He was unable, however, to identify this defendant at that time. He further acknowledged that the photograph that he selected had the number 10723 written on the back. The defendant claims that the only set of photographs with the "107 numbers" written on the back was state's exhibit No. 5. When pressed to answer whether he was shown only state's exhibit No. 5, Grimes testified that he was not sure and that he was probably shown at least one dozen photographs. Several photo arrays had been prepared in this case and Grimes was unable to recall precisely which array was shown to him.

The defendant asserts that "the obvious effect of that testimony was to convey to the jury the impression that he [Grimes] probably viewed states exhibits 4, 5, 6, 7 and 17, which in total, contained 36 photographs, rather than the 5 contained in states [sic] exhibit 5 with the 107 series on them."

The defendant's argument here is twofold: first, under *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963), he asserts that whenever the state attempts to buttress its in-court identification with a pretrial identification, the state must be prepared to establish with some certainty how it was done. Second, the use of the "107 series" in the 1976 photograph identification should have alerted the state that only state's exhibit No. 5, and not some additional photographs, was presented to Grimes.

The prosecutor at trial offered to stipulate that in every instance the photo arrays shown to each of the state's witnesses contained a photograph of defendant. The trial justice suggested that the prosecutor locate the officer who had displayed the array in order that defense counsel might interview him. Defense counsel rejected both suggestions as insufficient because they required defendant "to produce" a witness.

The trial justice disagreed with defendant's interpretation of *Brady* and its progeny. The trial justice found that these cases require the state to make exculpatory evidence available for a defendant's use. Once the evidence is made available to the defendant, it is defense counsel's role to determine whether the evidence should be offered to the jury. In *Brady* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S. Ct. at 1196–97, 10 L. Ed. 2d at 218. Nevertheless the *Brady* requirement is not without limitations. *See United States v. Agurs,* 427 U.S. 97, 111, 96 S. Ct. 2392, 2401, 49 L. Ed. 2d 342, 354 (1976)("we have rejected the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel").

As this court recognized in *In re Ouimette,* 115 R. I. 169, 177, 342 A.2d 250, 253 (1975), the central issue in a *Brady* analysis is the "materiality" of the suppressed evidence. In *State v. Wyche,* 518 A.2d 907, 910 (R.I. 1986), we stated that a determination of materiality will vary depending upon "the degree of prosecutorial culpability." In *Wyche* this court found that the prosecutor had deliberately suppressed evi-

dence of great exculpatory value. *Id.* In light of this knowing and deliberate nondisclosure, we found a violation of *Brady* without inquiry into the degree of prejudice from the nondisclosure. *Id.*

■ Unlike the situation in *Wyche*, the record in this case fails to indicate that the prosecutor knowingly withheld exculpatory evidence. Defense counsel conceded that he was well aware that Gregory Grimes had failed to identify defendant's photograph. The prosecutor offered to stipulate to this point in order that the jury would be aware of Grimes's inability to identify defendant. We agree with the trial justice that this is not a case in which the state knowingly presented perjured testimony or deliberately failed to disclose the falsity of testimony. Consequently, under the "variable standard" test for materiality set out in *Wyche*, we find no *Brady* violation here.

We also feel compelled to note that the Grimes testimony placed defendant at the scene of the fight and recalled specific events at the bar. However, it appears that the sole issue created by the photographs was the credibility of Grimes's identification of defendant. Identification was not in issue in this case; defendant admitted his presence at the crime scene and acknowledged fighting with members of the Grimes party, including Gregory Grimes. Since defendant's own testimony corroborates the identification testimony by Grimes, defendant cannot seriously claim that Grimes's identification testimony was false or otherwise flawed. Consequently we find no merit in defendant's appeal on this point.

■ The defendant next alleges that during the testimony of witness Stephen Dunbar, the trial justice erred by allowing the state's admission of defendant's motorcycle vest and jacket for identification. The vest and jacket were later admitted as full exhibits for consideration by the jury. When these exhibits of clothing were to be marked, defense counsel objected and argued to the trial justice that the clothing had no probative value and that its effect would be to "reinforce in the minds of the jury some preconceived notions that they

may have about, motorcyclists." Defense counsel pointed out that the state had already offered sufficient evidence of identification and the clothing was therefore unnecessary to the state's case. The trial justice overruled defendant's objection, ruling that the clothing was relevant to the issue of identity. We agree.

This court has held that the state may introduce relevant evidence in support of its burden of proof, even when a defendant claims that this evidence may have an inflammatory effect upon the jury. *See, e.g.,* *State v. Fenner*, 503 A.2d 518 (R.I. 1986). Most recently in *State v. Diaz*, 521 A.2d 129, 133 (R.I. 1987), we restated the principle that the state carries the burden of proving each and every element of the crime, although the defendant may suggest that he did "not dispute" that a crime had taken place. "Nevertheless, as we pointed out, in the absence of a stipulation, the state is not absolved from proving each and every element of the crime," including the identification of the defendant at the scene of the crime. *Id.* at 133–34. Consequently, the reasoning of the trial justice on this point was consistent with *Diaz* and within his informed discretion. *Id.; see State v. Winston*, 105 R.I. 447, 450, 252 A.2d 354, 356 (1969).

The defendant also claims that the trial justice erred in declining to instruct the jury of defendant's prior acquittals. The defendant was originally tried on this information in 1977. At that original trial, defendant was acquitted of some of the charges against him. With regard to the alleged assault of Gregory Grimes, defendant was acquitted of assault with a dangerous weapon. At the second trial, Gregory Grimes was permitted to testify regarding this assault. After Gregory Grimes completed his testimony, the trial justice instructed the jury that defendant had previously been acquitted of that assault in accordance with *State v. Bernier*, 491 A.2d 1000 (R.I. 1985). On appeal defendant claims that similar instructions should have been given with regard to the testimony of Dennis Grady and Nicholas Grimes.

In *Bernier*, the defendant was tried for sexual assault upon two minor females. In support of its direct case, the state offered evidence that the defendant had previously assaulted one of the victims on another occasion. In fact, the defendant had already been tried for the prior assault and found not guilty. This court found that the prior conduct of the defendant was admissible to show the defendant's " 'lewd disposition * * * or intent' toward the victim." *Id.* at 1004 (quoting *State v. Jalette*, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978)). The court held that evidence of an acquittal on the prior assault affects the weight of the evidence, not its admissibility. *Id.* at 1005. We concluded that in fairness to defendant and the state, when the evidence underlying the prior charge is admitted at trial, the jury may be informed of the prior acquittal "either by stipulation, by the parties' testimony, or by an instruction from the trial justice." *Id.*

With regard to the testimony given by Nicholas Grimes, the trial justice found that this witness never recounted defendant's alleged assault upon Nicholas Grimes before this jury. Defense counsel conceded this point. Thus the trial justice concluded that the evidence left the jury with no impression that defendant had criminally assaulted Nicholas Grimes. Therefore, the trial justice declined giving a *Bernier* type of instruction regarding Nicholas Grimes. Moreover, the trial justice pointed out that an instruction was only one of the alternatives provided in *Bernier*. The defendant makes a similar argument with regard to testimony by witness Dennis Grady. The trial justice found that Grady did not testify at the present trial that defendant had assaulted him with a dangerous weapon.

As noted above, *Bernier* offers three methods of informing the jury of a prior acquittal. With regard to the testimony of Nicholas Grimes and Dennis Grady, the trial justice in the case before us concluded that their testimony did not involve matters for which the defendant was previously acquitted. Upon our examination of the record, we agree with the trial

justice and conclude that a *Bernier* type of instruction was not necessary. We also note that the defendant does not claim that he was precluded from introducing the prior acquittal via witness testimony. This is one of the alternatives offered in *Bernier*, 491 A.2d at 1005, and the defendant fails to demonstrate that the trial justice precluded it. We conclude that the trial justice did not err in declining to instruct the jury of the defendant's prior acquittals.

The defendant raises several other issues: the admissibility of pretrial identifications by prosecution witnesses, the denial of the defendant's discovery request related to photographic-identification materials, the admissibility of an allegedly hearsay statement, the admissibility of allegedly improper questions by the prosecutor, the denial of the defendant's motion for judgment of acquittal, and the denial of the defendant's motion to introduce a prior statement by an allegedly unavailable witness. After careful examination of the record, we are of the opinion that any of these issues not already addressed in this opinion are without merit and require no further discussion. Accordingly, for the reasons stated, the defendant's appeal is denied and dismissed, the judgments of conviction appealed from are affirmed, and the papers in the case are remanded to the Superior Court.

MURRAY, J., did not participate.