**STATE**

**v.**

**Rafael DIAZ.**

**No. 85–126–C.A.**

Supreme Court of Rhode Island.

Feb. 24, 1987.

---

Arlene Violet, Atty. Gen., Thomas Dickinson, Sp. Asst. Atty. Gen., for plaintiff.

William F. Reilly, Public Defender, Paula Rosin and Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of conviction for second-degree murder entered in the Superior Court. This case was previously tried, but the defendant's conviction was set aside by reason of the fact that counsel for the state had failed to provide the defendant with complete discovery materials in accordance with the requirements of Rule 16 of the Superior Court Rules of Criminal Procedure. We affirm the second conviction. The facts of the case insofar as pertinent to this opinion are as follows.

The defendant, Rafael Diaz (Diaz) then a young man twenty-two years of age was living with a young girl of fifteen (Nancy) on Congress Avenue in the city of Providence. With them resided their infant child. Nancy's mother, Nancy's two brothers, and her sister Carmen lived in the first-floor apartment of the building next door. Another sister, Justa, lived on the second floor of the building next door.

On the evening of August 19, 1980, Nancy's sister Justa decided to call from her window to ask Nancy to wake her up the next morning. She heard loud musical noises coming from the apartment that Diaz shared with Nancy. In spite of Justa's efforts, her calls obtained no response from Nancy.

The next morning on August 20, Diaz deposited the baby with Nancy's mother, and told her that Nancy had left him and gone to New York. Justa, who was present, noticed some scratches on Diaz's neck and asked about them. He stated that Nancy was responsible for the scratch-es, which reply the sister did not find remarkable since Diaz and Nancy were always fighting.

On Friday, August 22, Diaz told Nancy's mother that he was leaving for New York. However, the mother later learned that Diaz had planned to leave the United States to go to the Dominican Republic. At that point the mother entered Nancy's apartment in order to obtain clothes for the baby. She noted a strong odor that seemed to come from behind a door that opened to an attic stairway. She and those who accompanied her also noticed that nails had been hammered into the door frame and that these nails had to be removed before the door could be opened. When the door was opened, the mother went up the stairs to the attic where she discovered her daughter's body lying on a mattress.

The medical examiner testified on the basis of an autopsy that Nancy had died of strangulation—specifically, from a fracture of the hyoid bone in her neck. Diaz gave a statement to the police in which he said that he and Nancy had had an argument because of her late return home and that they had begun to fight physically. He stated that Nancy obtained a knife and threatened to kill him. Diaz pushed her toward the floor, and Nancy kept trying to regain control of the knife. According to Diaz, she struggled and Diaz grabbed her by the throat. He kept telling her to keep quiet, but she kept struggling and then "sort of fainted" and became "soft". He placed her body in the attic because he was frightened. Diaz insisted in his testimony that he did not intend to kill Nancy and that it was an accident.

However, another witness, Angel Soto, testified at the second trial that Diaz had told him prior to August 19 that Angel should not go into the attic anymore because something bad was going to happen. It was this statement on the part of Angel that had not been disclosed in discovery prior to its presentation at the first trial. This constituted evidence of premeditation, and therefore, the nondisclosure of this

statement was the sole basis for the sustaining of defendant's appeal and the basis for our holding that a mistrial should have been granted at defendant's request. *State v. Diaz,* 456 A.2d 256 (R.I.1983). Obviously this discovery problem was not an issue at the second trial.

In support of his present appeal, Diaz raises two issues.

## I

DID THE TRIAL JUSTICE ERR IN DENYING DEFENDANT'S PRETRIAL MOTION TO DISMISS ON DOUBLE JEOPARDY GROUNDS BECAUSE OF THE FACT THAT HIS FIRST CONVICTION HAD BEEN OBTAINED THROUGH PROSECUTORIAL MISCONDUCT?

■ There is no question that this court held in *State v. Diaz, supra,* that the prosecutor in that case had failed to make known to counsel for defendant the substance of Angel's conversation with Diaz until the testimony was brought out by the prosecutor on May 7, 1981. It is also clear that the prosecutor was aware of this important information during the final days of April 1981. We therefore held that the trial justice was in error in refusing to declare a mistrial on May 7, 1981, because of this significant failure to disclose important information as required by Rule 16 of the Superior Court Rules of Criminal Procedure. *See State v. Darcy,* 442 A.2d 900 (R.I.1982).

Essentially, defendant appears to argue that since a mistrial should have been declared and since the necessity for mistrial was brought about by prosecutorial failure to comply with rules of discovery, double jeopardy principles preclude a second trial. In making this argument, defendant seeks to break new ground in the often complex area of double jeopardy limitations.

The seminal case relating to the inhibiting effect of a mistrial upon the prosecution's right to try a defendant a second time is *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

In that case a federal trial judge granted a mistrial on the request of the prosecution because certain witnesses had proved to be unavailable, and therefore, the United States Attorney was unprepared to go forward in respect to certain counts of the indictment. In an opinion written by Mr. Justice Douglas, the following principle was enunciated.

> "At times the *valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him* may be subordinated to the public interest—when there is an imperious necessity to do so. \* \* \* Harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict are examples when jeopardy attaches." (Emphasis added.) 372 U.S. at 736, 83 S.Ct. at 1034, 10 L.Ed.2d at 102–03.

Applying the foregoing principle to the facts in *Downum,* the Court held that the granting of a mistrial for the benefit of the prosecution was not impelled by imperious necessity and therefore constituted an improper denial of the defendant's right to go forward before the initial tribunal assembled to try his case. Therefore, it was held that the defendant could not be tried before a second jury. Double jeopardy principles barred such a retrial.

The same principle was reenunciated in *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). In that case a judge declared a mistrial in order to give certain witnesses an opportunity to obtain counsel to advise them concerning their rights against self-incrimination. In an opinion written by Mr. Justice Harlan, the Court held that the trial judge abused his discretion in declaring the mistrial and thus improperly deprived the defendant of his right to proceed to determination before the first tribunal. Consequently the defendant could not be subjected to a second trial.

It should be noted that the Court has never applied such a drastic doctrine to the setting aside of a conviction on appeal. In

*United States v. Tateo*, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), a defendant had pleaded guilty to a multicount indictment charging bank robbery and related offenses, including conspiracy. After certain *in terrorem* statements made by the trial judge to Tateo's counsel concerning sentences that would be imposed in the event of a guilty verdict by the jury, Tateo pleaded guilty to all charges except a count on kidnapping, which was dismissed with the prosecution's consent. In a collateral proceeding another district judge set aside the conviction and ordered a new trial on the ground that the pleas were not voluntary and were induced in part by the trial judge's comments. Thereafter, the defendant was reindicted and the double jeopardy defense was raised essentially on the ground that the defendant's right to proceed to verdict had in effect been terminated by judicial coercion. In response to this argument the Supreme Court, again in an opinion by Mr. Justice Harlan, took the position that the Fifth Amendment ban on double jeopardy did not constitute a bar to a retrial of a defendant whose conviction is set aside because of an error in the proceedings leading to conviction. The defendant sought to draw a distinction between the setting aside of a conviction on the ground of a coerced guilty plea and other successful appeals based upon error in the proceedings since his involuntary plea of guilty deprived him of an opportunity to obtain a jury verdict of acquittal.

The Court responded by observing that there was no distinction between reversal of a case because of a coerced confession, deficiency in the indictment, or an improper instruction on the one hand, as opposed to the coerced pleas of guilty at issue. "A defendant is no less wronged by a jury finding of guilty after an unfair trial than by a failure to get a jury verdict at all; the distinction between the two kinds of wrongs affords no sensible basis for differentiation with regard to retrial." 377 U.S. at 467, 84 S.Ct. at 1589–90, 12 L.Ed.2d at 451. Justice Harlan went on to say that the decision in *Tateo* was in no way inconsistent with the holding of *Downum v.*

*United States, supra.* He pointed out that had Tateo *"requested* a mistrial on the basis of the judge's comments, there would be no doubt that if he had been successful, the government would not have been barred from retrying him." 377 U.S. at 467, 84 S.Ct. at 1590, 12 L.Ed.2d at 452.

In an unbroken line of cases since *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), the Court has steadfastly maintained that the setting aside of a defendant's conviction on appeal in this country's courts (unlike the English system) does not bar a retrial of the defendant unless the conviction is set aside on the ground that the evidence was insufficient to support the verdict. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Thus, it would appear that defendant's double jeopardy claim raised after a successful appeal would find no support in the controlling federal cases. The defendant has made no claim that the evidence supporting his conviction at the first trial was insufficient.

However, defendant does argue that this court sustained his appeal on the ground that a mistrial should have been awarded. He further argues that under the doctrine of *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), a mistrial deliberately brought about by prosecutorial misconduct should preclude a second trial. However, his reliance on this case is misplaced since the Court in *Kennedy* recognized only one exception to the general rule that a mistrial requested by a defendant does not bar a retrial. *See United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). That exception as set forth in *Oregon v. Kennedy* was described as a situation wherein the prosecutorial "conduct in question [was] intended to 'goad' the defendant into moving for a mistrial." 456 U.S. at 676, 102 S.Ct. at 2089, 72 L.Ed.2d at 425.

In the case at bar, as in *Oregon v. Kennedy*, the prosecutor did not intend to bring about a mistrial, even though his conduct gave rise to a situation in which a mistrial should properly have been granted.

In the first trial of the instant case, the prosecutor vigorously opposed defendant's motion for a mistrial and persuaded the judge to deny the request. Indeed, the trial justice who conducted a hearing on this issue prior to the second trial specifically found that defendant had failed to prove "that [the prosecutor] engaged in any intentional action to provoke a mistrial in that first trial." We have stated in *State v. Gordon*, 508 A.2d 1339, 1346 (R.I. 1986), that the question of whether prosecutorial misconduct was intended to provoke the defendant into seeking a mistrial is a factual question that is appropriately decided by the trial court. An examination of the record of the first trial, as well as the hearing conducted by the trial justice on this issue prior to the second trial, discloses that the conclusion of the second trial justice was amply supported by evidence both direct and circumstantial that the prosecutor had no intention of bringing about a mistrial. He simply misapprehended his duty under the applicable rules of discovery.

The defendant also argues that this court should adopt a more stringent rule under the Rhode Island Constitution relating to the barring of retrials than the rule adopted by the Supreme Court in *Oregon v. Kennedy* in respect to prosecutorial overreaching. We are of the opinion that the Fifth Amendment bar on retrials as interpreted by the United States Supreme Court constitutes a series of drastic remedies that may well allow a guilty defendant to go absolutely free because of a procedural miscalculation either by a trial judge or by the prosecution. In applying these drastic remedies the Supreme Court of the United States has attempted to reach a careful balance between the right of a defendant to obtain a completion of his trial by the first tribunal assembled to pass in judgment upon him and the societal interest in apprehending and punishing those who are guilty of serious crimes. We believe that the balance achieved by the Supreme Court of the United States is as favorable to the perceived rights of defendants as should rationally be applied in criminal cases. We

are unwilling to interpret article 1, section 7 of the Rhode Island Constitution in such fashion as further to subordinate societal interests in effective prosecution of the guilty.

Therefore, we hold that the trial justice did not err in denying defendant's pretrial motion to dismiss this case on double jeopardy grounds.

## II

### DID THE TRIAL JUSTICE ERR IN ADMITTING INTO EVIDENCE A PHOTOGRAPH OF THE DECEASED VICTIM?

■ The defendant contends that the trial justice was in error in admitting into evidence a black-and-white photograph of the victim that was taken at the time the police discovered the body in the attic of the dwelling at 7 Congress Avenue. At trial defense counsel argued that the photograph would tend to be inflammatory, and therefore, its probative value would be outweighed by its prejudicial effect. The trial justice, however, determined that although the photograph "may not be of a tasteful nature," it was nevertheless relevant and "the evidentiary value of this photograph far outweighs any possible prejudice to the defendant."

This court on several occasions has held that relevant photographs, even though unpleasant, may properly be admitted into evidence in order to sustain the state's burden of proving the elements of the crime in issue. *See, e.g., State v. Fenner*, 503 A.2d 518 (R.I.1986); *State v. Bowden*, 113 R.I. 649, 324 A.2d 631 (1974), *cert. denied*, 419 U.S. 1109, 95 S.Ct. 782, 42 L.Ed.2d 805 (1975); *State v. Ryan*, 113 R.I. 343, 321 A.2d 92 (1974).

Most recently in *Fenner*, we reasserted the principle that it is the burden of the state to prove each and every element of the crime even though the defendant may suggest that he did "not dispute" that a crime had taken place. Nevertheless, as we pointed out, in the absence of a stipula-

tion, the state is not absolved from proving each and every element of the crime including the death of the victim by means properly concluded to be homicide. The photograph in question tended to prove the death of the victim and the concealment of her body. Further, it tended to prove and explain in combination with the testimony of the medical examiner the scope of his findings and more significantly the absence of findings due to the decomposed state of the victim's body at the time the autopsy was performed. It was essential for the state to provide evidence of the corpus delicti prior to introduction of defendant's statement. This photograph formed a significant part of the state's proof that a homicide had been committed.

We have held in *State v. Cline*, 122 R.I. 297, 405 A.2d 1192 (1979) that a defendant has no right to be insulated from relevant evidence. The determination of whether the probative value of relevant evidence is outweighed by its prejudicial effect has appropriately been left to the informed discretion of the trial justice. *See State v. Winston*, 105 R.I. 447, 450, 252 A.2d 354, 356 (1969). Relying upon the circumstances and the facts of this case, we are of the opinion that the trial justice properly exercised his discretion in admitting the challenged photograph.

For the reasons stated, the defendant's appeal is denied and dismissed and the judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.