STATE

v.

Russell A. MALLETT.

No. 90–448–C.A.

Supreme Court of Rhode Island.

March 20, 1992.

James E. O'Neil, Atty. Gen., Annie Goldberg, Special Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Kevin J. Bristow, Special Asst. Atty. Gen., for plaintiff.

C. Leonard O'Brien, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the appeal of the defendant, Russell A. Mallett, from an order of the Superior Court denying his motion to dismiss an indictment for murder and assault with intent to murder on the ground that the principles underlying the ban on double jeopardy guaranteed by the Fifth Amendment to the Constitution of the United States preclude a retrial of his case following a declaration of a mistrial. We affirm the order. The circumstances that resulted in the case being before us in this posture are as follows.

This case came before a justice of the Superior Court for trial, and after the impaneling of a jury, counsel for the state made an opening statement. Defense counsel objected to the opening statement and moved for a mistrial on the ground that the prosecutor referred to testimony that would be presented by a principal witness for the state. Defense counsel argued that reference to this testimony was improper because the prosecutor was aware that this witness was recalcitrant and unwilling to testify. Bella Duhaime (Duhaime), a principal witness for the state, had been with defendant on the night of the crime and had given information to the prosecution indicating that she was defendant's girlfriend. She had further stated that the victim, Juan Figueroa, had thrown a rock at her, as a result of which action defendant had shot Figueroa.

The jury was sworn October 31, 1989, and prior to the opening statement, the prosecutor advised the court and defense counsel that Duhaime was a reluctant witness and might refuse to testify. The trial justice examined the witness at a voir dire hearing outside the presence of the jury, prior to the opening statement, and after having given her an opportunity to consult with counsel. At this hearing Duhaime unequivocally stated that she would not testify because she was afraid of retaliation. The trial justice, after admonishing her, ultimately sentenced her to three months' confinement in the women's reformatory for contempt. The court then recessed for the day.

The next morning the prosecutor made an opening statement to the jury, describing the events surrounding the shooting and the expected testimony from three witnesses, including Duhaime. Immediately following the opening statement counsel for defendant moved for a mistrial based

upon the inability of the state to provide testimony in support of the prosecution's opening statement. The trial justice reserved judgment on the motion and again recessed until the following day.

The next day testimony was elicited from the medical examiner and from David Briene, an off-duty member of the Providence police department, who had gone to the scene of the crime and discovered two victims of the shootings after the crime had taken place.[1]

At this point the state requested of the court permission to present another witness, one Albert Hewett, a nephew of Duhaime. This witness had not been identified in pre-trial discovery. However, the prosecutor offered to prove through Hewett that defendant had admitted to him during the summer of 1988 that he had fired the fatal shot on July 25, 1987. Hewett would also testify that he and other family members had been threatened by defendant as recently as the week of October 23, 1989 (just prior to the impaneling of the jury on October 31, 1989).

Counsel for defendant sought to preclude this evidence on the ground that it constituted a violation of the discovery obligations of the state and constituted unfair surprise. At this point the trial justice granted the motion for mistrial that had been made the previous day. In ordering the mistrial, the trial justice weighed the equities in respect to allowing the new witness to be presented. He stated that the ends of justice could only be served by passing the case in order to give defendant time to prepare a defense. When the trial justice declared the mistrial, counsel for defendant made the following comment:

> "I heard the court's ruling. I am not arguing against it. However, I do want to make it clear and I would ask that my exception be noted and be noted because I regard this as an intentional act by the state."

The defendant argues that the trial justice declared the mistrial sua sponte. However, this argument is rebutted by the facts (1) that defense counsel had made a motion for a mistrial the previous day, (2) that the trial justice had reserved ruling on the motion, and (3) that defense counsel had never withdrawn the motion and indeed did not oppose the mistrial when granted. When defense counsel moved to dismiss the indictment on double jeopardy grounds eight days later before the same trial justice, the justice stated that he had granted the mistrial in response to defendant's earlier motion to pass the case.

We have set forth the stringent standards adopted by the Supreme Court of the United States relating to the limitation upon a retrial after the granting of a mistrial by a trial justice other than at the request of the defendant in *State v. Torres*, 524 A.2d 1120, 1123–1124 (R.I.1987).

Generally the rule enunciated by Justice Story in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824), asserts that a mistrial should be declared only under circumstances in which there is a manifest necessity for the act or the ends of public justice would otherwise be defeated. This standard was reenunciated in *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Justice Douglas, speaking for the Court, stated that "the valued right of a defendant to have his trial completed by the particular tribunal summoned to sit in judgment on him may only be subordinated to the public interest when there is an 'imperious necessity' to do so." *Id.*, 372 U.S. at 736, 83 S.Ct. at 1034, 10 L.Ed.2d at 102. "Manifest necessity" and "imperious necessity" are regarded as synonymous terms. *Arizona v. Washington*, 434 U.S. 497, 505–06 n. 17, 98 S.Ct. 824, 830 n. 17, 54 L.Ed.2d 717, 728 n. 17 (1978). *See also United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

---

**1.** Juan Figueroa had died almost instantly. Another victim, Homero Janez–Rodriquez was shot but survived and identified defendant as the assailant who had shot them both. Rodriquez, one of three witnesses designated by the state in pre-trial discovery, did not testify prior to the order granting a mistrial.

However, this stringent rule is subject to the exception that a mistrial will not bar a retrial in the event that the mistrial is granted at the request of the defendant. *Oregon v. Kennedy,* 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). The defendant argues that the rule of *Oregon v. Kennedy* and *United States v. Dinitz* should not be applicable in this case because the prosecution attempted to goad defendant into seeking a mistrial by its improper opening statement and by seeking to introduce the testimony of a surprise witness.

A review of the record does not indicate any attempt by the prosecution or the court to goad defendant into seeking a mistrial. The prosecution, having been faced with the recalcitrance of a witness, sought to obtain another witness. Although the prosecution's opening statement may have been inappropriate, it was no more inappropriate than the question asked in *Oregon v. Kennedy* by the prosecution that strongly implied that the defendant was a crook. Although the conduct in both *Kennedy* and the instant case may have constituted prosecutorial error, the conduct in the case at bar as well as in *Kennedy* was not designed to provoke defendant into seeking a mistrial. The Court in *Kennedy* was clear in stating that prosecutorial misconduct, even if considered overreaching, would not bar a retrial following a mistrial at a defendant's request unless intended specifically to provoke the defendant into making such a request.

The defendant here argues that the court should have granted a continuance as opposed to declaring a mistrial. The short answer to this contention is that defendant did not request a continuance, nor did defendant give any notice to the trial justice that he was opposing the granting of a mistrial at the time the ruling was made. Defense counsel did give the trial court an indication that he might argue that the conduct of the prosecution was deliberate. However, he now combines that argument before us with the contention that the trial justice declared a mistrial sua sponte. We are not persuaded by either of these arguments.

The defendant argues both that *Oregon v. Kennedy, supra,* unduly narrows the double jeopardy protections accorded by the Fifth Amendment to the Constitution of the United States and suggests that we should give a more expansive scope of protection under the parallel provision of article 1, section 7, of the Rhode Island Constitution. This we decline to do. We believe that the protection afforded in this area by the Federal Constitution as interpreted by the Supreme Court of the United States strikes an adequate balance between the rights of a criminal defendant and the public interest in bringing to justice those who have committed serious crimes. *State v. Diaz,* 521 A.2d 129, 133 (R.I.1987). Consequently we shall follow the principles enunciated in *Oregon v. Kennedy.*

The case is properly before us on the appeal of the defendant from the denial of his motion to dismiss, even though such a ruling was interlocutory. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *State v. Berberian,* 122 R.I. 693, 411 A.2d 308 (1980). However, in view of our conclusion that the mistrial was granted in response to the defendant's motion to pass the case and that the prosecution—though arguably misleading in the opening statement and in violation of the discovery rules in the presentation of Hewett as a witness—did not intend to goad or to provoke the defendant into requesting a mistrial, the appeal from the denial of the motion to dismiss cannot be sustained.

For the reasons stated, the appeal of the defendant from the denial of his motion to dismiss the indictment is denied and dismissed. The ruling of the Superior Court is affirmed, and the papers in the case may be remanded to the Superior Court for further proceedings.