STATE

v.

Jolon O'CONNOR.

No. 2006–149–C.A.

Supreme Court of Rhode Island.

Dec. 10, 2007.

Aaron L. Weisman, Esq., Providence, for Plaintiff.

Walter R. Stone, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

This case comes before us on the appeal of the defendant, Jolon O'Connor, from an order of the Superior Court denying his motion to dismiss on double jeopardy grounds an indictment for murder and assault with intent to commit a felony; the motion to dismiss was predicated on alleged prosecutorial goading that resulted in the declaration of a mistrial.

This Court has held that a defendant may immediately appeal from the denial of a motion to dismiss on double jeopardy grounds, even though such an appeal is interlocutory. *See State v. Casas,* 792 A.2d 737, 739 (R.I.2002); *see also State v. Wiggs,* 635 A.2d 272, 275 (R.I.1993); *State v. Chase,* 588 A.2d 120, 122 (R.I.1991). Rule 12(b)(2) of the Superior Court Rules of Criminal Procedure calls for the defense of double jeopardy to be raised by motion before the trial commences.

In the event that the appeal of his motion to dismiss were to be unsuccessful, Mr. O'Connor asks this Court to order exclusion of the testimony of the witness whose testimony prompted the motion for a mistrial. For the reasons set forth herein, we affirm the order of the Superior Court.

### Facts and Travel

The witness whose testimony lies at the core of this appeal, Jesse Sanders, testified that he was sitting with Lawrence Clement on the porch of a house located at 20 Glenham Street in Providence on the night of October 7, 2000. Mr. Sanders testified that while sitting there he received a phone call from Justin O'Connor, the brother of defendant; shortly thereafter, Justin arrived at the Glenham Street house in his car with three other people, including Jolon.[1] Mr. Sanders testified that when Justin exited the car, he and Justin argued about a sum of money that he purportedly owed Justin. Mr. Sanders testified that Justin then returned to the car and drove away from the house on Glenham Street.

---

1. For the sake of simplicity, we shall refer in the Facts and Travel section of this opinion to the members of the O'Connor family by their first names. We intend no disrespect.

According to Mr. Sanders' testimony, after Justin drove away, he noticed a woman in the driveway starting to "back up like she's scared." He testified that he also observed a young man standing in the driveway; that man was dressed in a black hooded sweatshirt with a bandana covering his face. He further testified that the man then fired two shots towards him. Mr. Sanders testified that he fled the scene running when he heard Mr. Clement, who had been sitting on the porch with him, fall to the ground. It was further the testimony of Mr. Sanders that, after the gunman fired the shots, he saw that the gunman's mask had fallen from his face, and he recognized Jolon as the assailant. Mr. Clement died as a result of the shooting.

On January 19, 2001, a grand jury returned an indictment against defendant, charging him with one count of murder and one count of assault with intent to murder.

A jury trial commenced on June 3, 2002 in Superior Court. On the first day of trial, as part of the prosecution's case, Mr. Sanders testified as to the facts and circumstances surrounding the shooting. During the course of Mr. Sanders' testimony on redirect examination, the following exchange occurred:

"[PROSECUTOR]: What were—what was [Jolon] calling you about then?
"[WITNESS]: Business
"[PROSECUTOR]: Business?
"[WITNESS]: Yes.
"[PROSECUTOR]: What business?
"[WITNESS]: Drug business."

The defendant made no objection after the above-quoted testimony was given, but later moved to pass the case[2] because of the reference to defendant's purported involvement with the drug business. On June 5, 2002, outside the presence of the jury, the trial justice heard arguments regarding the motion to pass the case.

Defense counsel argued that the prejudicial nature of the witness's comment made the declaration of a mistrial in order, although he also stated on the record: "I don't blame [the prosecutor] for that. I think he was caught off guard as well as I was [.]"

The prosecutor in turn stated that he "certainly didn't anticipate that Mr. Sanders was going to answer the question the way he did [.] * * * I thought he was going to respond that the defendant had attempted to buy a car from him [.]"

The trial justice observed that the prosecutor was "really chagrined" to hear the witness's response and that there was "no question" in his mind that the prosecutor had not anticipated the prejudicial statement from Mr. Sanders. The trial justice determined that defendant's right to a fair trial could be compromised if he permitted the trial to continue, and he therefore granted defendant's motion to pass the case. After the jury returned to the courtroom, the trial justice stated:

"[O]ut of an abundance of caution, making sure the defendant has a fair trial and the state has a fair trial I passed the case and we will have to try it again some other time. * * * I don't know how I could unring that bell."

A few days after the trial justice granted defendant's motion to pass the case, the prosecutor advised defense counsel of a conversation he had had with Mr. Sanders on June 3, 2002, the day of the testimony

**2.** In Rhode Island, the terms "motion to pass the case" and "motion for a mistrial" are synonymous. *State v. Fortes,* 922 A.2d 143, 148 n. 3 (R.I.2007); *State v. Disla,* 874 A.2d 190, 198 (R.I.2005).

that was the basis for the mistrial. The prosecutor later described this conversation in a supplemental answer to defendant's motion for discovery and inspection. The prosecutor indicated in the supplemental answer that in that conversation Mr. Sanders had told him that, about two months prior to the murder, Justin, defendant's brother, had attempted to buy Mr. Sanders' 1973 Buick in exchange for some marijuana and cash. According to the supplemental answer, Justin's father wanted to inspect and drive the car prior to the sale, but Mr. Sanders refused those requests. The prosecutor related this information to defense counsel after the mistrial was declared.

On April 29, 2003, before the second trial began, defendant filed a motion to dismiss the indictment on double jeopardy grounds; he contended that the prosecutor had deliberately elicited the testimony about "[d]rug business" from the witness, thereby intending to goad defendant into requesting a mistrial. The defendant simultaneously moved, in the event his motion to dismiss were to be unsuccessful, to exclude—as being perjurious—the testimony of Mr. Sanders, who had testified at the first trial as to defendant's drug involvement.

On May 5, 2003, a hearing was held in the Superior Court on defendant's motion to dismiss.[3] The hearing justice reviewed the record and heard arguments from the prosecutor and defense counsel. The hearing justice concluded that the transcript of what had transpired at the time of the first trial indicated that the "[d]rug business" testimony by Mr. Sanders had surprised both the prosecution and the defense. During the hearing on the motion to dismiss, the prosecutor stated that

he thought, with regard to his questions to the witness, that the witness's "business" with the defendant involved the sale of an antique car, not drugs. In pertinent part, the prosecutor stated as follows:

"I had asked the witness what business he was talking about. I anticipated he was going to say car business he had, and I had briefly discussed—was only in passing on the way up to the courtroom the first day—that we both have antique cars. I have a '65 Mustang. I think he had a '73 Buick, I think, was the model. * * * I thought he said he was going to sell it, or thinking about selling the car to Jolon O'Connor. He may have said Justin. Either I misunderstood what he said, or he misspoke. I'm not sure which."

The prosecutor then stated that he met with Mr. Sanders and a detective assisting on the case after the mistrial had been declared; the prosecutor stated that at that point Mr. Sanders was "very clear and he said he had attempted to sell his car to Justin [.]"

Defense counsel stated in response that the "whole basis of [his] concern about [defendant] being goaded" originated in the irrelevance of the line of questioning in which the prosecutor was engaged at the time that the witness made the statement about "[d]rug business." The prosecutor asserted that the purpose of that line of questioning was to demonstrate that the witness had spoken to defendant "about things other than drugs," thereby strengthening the credibility of the witness after the defense counsel had introduced voluminous phone records against him. In the hearing on defendants motion to dismiss, the prosecutor stated:

3. The Superior Court justice who presided over the first trial in 2002 had passed away by the time the hearing on the April 2003 mo-

tions was conducted, and therefore a different justice of the Superior Court presided over the hearing.

"I'm trying to prove [Mr. Sanders] isn't a drug dealer. The inference here is [defense counsel] is trying to say he is a drug dealer without asking him by saying he made 107 phone calls [in] one day. I was trying to prove using the defendant as a buttress to the fact that Mr. Sanders had made many phone calls about things like cars. That is what the questioning was designed for."

The hearing justice rejected defendant's arguments and found "absolutely no grounds upon which to base a motion to dismiss on the theory of double jeopardy, none whatsoever." He stated:

"I don't think that the supplemental discovery that [defense counsel] alluded to that occurred after the mistrial * * * in any way changes those findings by [the trial justice], who stated at the time, on the record, that he found no 'bad faith,' so to speak, by the State. There is no evidence anywhere in these comments and findings in the transcript that the defendant was goaded into moving for a mistrial."

Having made these observations, the hearing justice denied defendant's motion to dismiss, and defendant filed a timely notice of appeal.

The defendant has appealed to this Court from the Superior Court order denying his motion to dismiss the indictment on the grounds of double jeopardy. In the event that we uphold the denial of the motion to dismiss, defendant urges us to require exclusion of testimony by Mr. Sanders, who testified at the first trial as to defendant's purported involvement in the "[d]rug business." The defendant contends that the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and article 1, section 7, of the Rhode Island Constitution preclude the state from trying him again for the offenses charged in the indictment.[4] He bases his secondary argument on the theory that the witness's testimony should be excluded because the testimony he offered at trial was perjured.

## Standard of Review

We have stated that, where a defendant has moved for a mistrial and asserts on appeal that double jeopardy bars his retrial because of prosecutorial goading, we defer to the trial court's findings of fact. See State v. Hull, 754 A.2d 84, 87 (R.I. 2000); see also State v. Diaz, 521 A.2d 129, 133 (R.I.1987); State v. Gordon, 508 A.2d 1339, 1346 (R.I.1986).

A trial court's finding as to "whether prosecutorial misconduct was intended to provoke the defendant into seeking a mistrial is a factual question that is appropriately decided by the trial court." Diaz, 521 A.2d at 133. This Court will not disturb the trial court's finding on that factual issue if it is supported by competent evidence. See Hull, 754 A.2d at 87; see also Oregon v. Kennedy, 456 U.S. 667, 675, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

## Analysis

Contending that the prosecutor goaded him into moving for a mistrial, Jolon O'Connor argues on appeal that the Supe-

---

**4.** The Fifth Amendment to the United States Constitution (made applicable to the states through the Fourteenth Amendment) and article 1, section 7, of the Rhode Island Constitution protect a defendant from being prosecuted more than once for the same offense. See State v. Perez, 605 A.2d 1305, 1308–09 (R.I. 1992). The Fifth Amendment to the United States Constitution provides in pertinent part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb[.]" Similarly, article 1, section 7, of the Rhode Island Constitution states in pertinent part: "No person shall be subject for the same offense to be twice put in jeopardy."

rior Court erred in denying his motion to dismiss on double jeopardy grounds. Mr. O'Connor builds his argument on the exception that the United States Supreme Court engrafted upon the general rule that, when the declaration of a mistrial occurs at a defendant's request, the principle of double jeopardy does not bar the retrial of the defendant. The Supreme Court described the parameters of this exception in *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), in which case it held that, when a defendant has been goaded into moving for a mistrial, double jeopardy principles preclude a second trial of the case.

During the trial in *Kennedy*, the state called an expert witness to testify as to the value of a stolen item, and the prosecutor, apparently intending to elicit reasons why the witness had filed a criminal complaint against the defendant, initiated the following exchange:

"Prosecutor: Have you ever done business with the Kennedys?

"Witness: No, I have not.

"Prosecutor: Is that because he is a crook?" *Kennedy*, 456 U.S. at 669, 102 S.Ct. 2083.

In light of this comment, the trial court granted the defendant's motion for a mistrial. When the state attempted to retry the defendant, he asserted that double jeopardy precluded his retrial and sought to dismiss the charges. At a hearing on this issue, the trial court found as a fact that the prosecutor did not intend to cause a mistrial and held that double jeopardy did not bar retrial. *Kennedy*, 456 U.S. at 669–70, 102 S.Ct. 2083.

On appeal, the Oregon Court of Appeals was persuaded by the defendant's double jeopardy argument. Accepting the trial court's finding that the prosecutor did not intend to cause a mistrial, the Court of Appeals nevertheless held that the prosecutorial misconduct at issue constituted "overreaching" and concluded that double jeopardy barred retrial of the defendant.

The Supreme Court disagreed. It held that, where a defendant successfully moves for a mistrial, double jeopardy bars a second trial only if the conduct giving rise to the mistrial was prosecutorial or judicial conduct intended to provoke the defendant into moving for a mistrial. *Kennedy*, 456 U.S. at 676, 102 S.Ct. 2083.[5]

■ This Court has embraced the standard set forth in *Kennedy*. It is well settled in this jurisdiction that, when a defendant has successfully moved for a mistrial, the federal and state constitutional prohibitions against double jeopardy prevent retrial only when the mistrial was the result of governmental action intended to provoke the defendant's motion for a mistrial. *See, e.g., State v. Beltre*, 764 A.2d 190, 191 (R.I.2000) (mem.) (permitting a retrial because there was no indication in the record that the prosecutor intended to goad the defendant into requesting a mistrial); *Diaz*, 521 A.2d at 132–33 (rejecting the defendant's argument that the prosecutor's violation of the rules of discovery, which necessitated a mistrial, barred the retrial of the defendant on double jeopardy grounds).

■ We have previously observed that prosecutorial conduct that does not rise to

5. The following language from the Supreme Court's opinion in *Oregon v. Kennedy*, 456 U.S. 667, 675–76, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), regarding the intent requirement merits quotation: "Prosecutorial conduct that might be viewed as harassment or over-

reaching, even if sufficient to justify a mistrial on defendant's motion, * * * does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause."

the level of goading the defendant into moving for a mistrial is outside the scope of the application of double jeopardy. *See Beltre,* 764 A.2d at 191. Mere prosecutorial error, therefore, although it may incite a mistrial, will not preclude retrial. *See Gordon,* 508 A.2d at 1345.

■ Furthermore, we have repeatedly declined invitations to broaden our standard for deciding whether double jeopardy bars the retrial of a defendant whose case ended in a mistrial. *See, e.g., Casas,* 792 A.2d at 740; *State v. McIntyre,* 671 A.2d 806, 807 (R.I.1996); *State v. Perez* 605 A.2d 1305, 1310 (R.I.1992); *State v. Mallett,* 604 A.2d 1263, 1265 (R.I.1992). As we observed in *Mallett:*

"We believe that the protection afforded in this area by the Federal Constitution as interpreted by the Supreme Court of the United States strikes an adequate balance between the rights of a criminal defendant and the public interest in bringing to justice those who have committed serious crimes." *Mallett,* 604 A.2d at 1265.

Unless a prosecutor's misconduct was intended to goad a defendant into moving for a mistrial, therefore, the double jeopardy principle does not forbid a second trial. *Casas,* 792 A.2d at 739.

■ In his brief to this Court, Mr. O'Connor contends that the prosecutor deliberately goaded him into moving for a mistrial when he "went out of his way to ask questions * * * that elicited the 'drug business' remark which, of course, necessitated the mistrial." He argues that, because the out-of-court conversation that led the prosecutor to ask the question of Mr. Sanders was not known to the trial

court or defense counsel until after the declaration of a mistrial, remarks that the hearing justice and defense counsel made in court at the time of the mistrial hearing were not relevant. The prosecutor contends that he did not goad defendant into seeking a mistrial, but rather misspoke or misunderstood what Mr. Sanders had told him.

At the time that he declared the mistrial, the trial justice observed on the record that it was his conclusion that the prosecutor had not anticipated that the witness would make the comment about drugs, stating further that he observed that the prosecutor was "really chagrined" to hear the witness's response to his question. The trial justice remarked on the record: "There is no question in my mind that [the prosecutor] did not know this answer was going to come forth. I accept that as a fact * * *." Furthermore, after reviewing the record, including the above-quoted comments by the trial justice, the hearing justice who later heard defendant's motion to dismiss the indictment on double jeopardy grounds found: "There is no evidence anywhere in these comments and findings in the transcript that the defendant was goaded into moving for a mistrial."

■ We agree. Our careful review of the record leads us to conclude that the hearing justice did not err in determining that the prosecutor did not goad defendant into moving for a mistrial. In adhering to the standard as set forth in *Kennedy,* a court faced with a double jeopardy motion where intentional goading is alleged, "examines the intent of the prosecutor"; it then becomes the court's role "to make a finding of fact" as to the intent issue.[6]

6. In ruling that the focus should be on prosecutorial intent rather than on some more amorphous concept such as "overreaching," the Supreme Court in *Kennedy* noted that, "a

standard that examines the intent of the prosecutor, though certainly not entirely free from practical difficulties, is a manageable stan-

*Kennedy,* 456 U.S. at 675, 102 S.Ct. 2083. This Court gives deference to the trial court's findings on this issue; the question of whether or not prosecutorial misconduct was intended to provoke a defendant into moving for a mistrial is a factual question for the trial court. *Perez,* 605 A.2d at 1309.

In the instant case, the reactions of the trial justice, as well as the findings of the justice who heard the motion to dismiss, clearly support the hearing justice's conclusion that, under the *Kennedy* standard, neither the federal constitution nor the state constitution bars the retrial of Mr. O'Connor. The record indicates that the prosecutor's decision to engage in the questioning that produced the testimony about drugs may have been the result of a mistake, but a prosecutorial mistake does not, in and of itself, constitute goading.

Because we, like the Superior Court, perceive no evidence of intent on behalf of the prosecutor to goad Mr. O'Connor into moving for a mistrial, we affirm the order denying defendant's motion to dismiss.

 As to Mr. O'Connor's request that this Court exclude as perjurious the prior and potential future testimony of Mr. Sanders, we conclude that the issue is not properly before us at this time. We agree with the hearing justice that that particular issue is "a matter to be left to the time

of trial and certainly not one that invites * * * an interlocutory appeal." The issue of excluding testimony does not fall within the exception of *Abney v. United States,* 431 U.S. 651, 657–60, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), which permits a party to appeal, on double jeopardy grounds, before the entry of a final judgment. *See State v. Berberian,* 122 R.I. 693, 698, 411 A.2d 308, 311–12 (1980); *see also State v. Northrup,* 688 A.2d 863 (R.I.1997) (mem.) (holding that, following a mistrial, a defendant does not have the right to have the sufficiency of the evidence reviewed on immediate appeal, though he would have had that right had he been convicted). Accordingly, at this time, we will not address the issue of the allegedly perjurious testimony of Mr. Sanders.

## Conclusion

For the reasons delineated in this opinion, the defendant's appeal is denied and dismissed. The order appealed from is affirmed, and the papers in the case may be remanded to the Superior Court for further proceedings.

dard to apply." *Kennedy,* 456 U.S. at 675, 102 S.Ct. 2083. The Court went on to state: "[Such a standard] merely calls for the court to make a finding of fact. Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system." *Id.*