**Supreme Court**

No. 2012-12-C.A.

(P2/08-3477A)

State                          :

v.                           :

Jethro Rolle.                     :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State          :

v.          :

Jethro Rolle.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**A M E N D E D   O P I N I O N**

**Justice Indeglia, for the Court.**  The defendant Jethro Rolle (Rolle or defendant) appeals from the Superior Court's denial of his motion to dismiss a charge of second-degree sexual assault on double jeopardy grounds.[1]  This case came before the Supreme Court on January 23, 2014, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After carefully considering the parties' written and oral submissions, we are satisfied that cause has not been shown.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Travel**

It is undisputed that, on the evening of August 6, 2008, the complaining witness, Lisa, visited defendant's home, where some kind of sexual encounter between the fifteen-year-old Lisa and the forty-two-year-old defendant took place.[2]  Beyond these basic facts, however,

---

[1] Although interlocutory, the denial of a motion to dismiss on double jeopardy grounds is immediately appealable.  State v. Casas, 792 A.2d 737, 739 (R.I. 2002).

[2] Given the complaining witness's young age at the time of the incident, we have given her a pseudonym to protect her privacy.

defendant's and Lisa's accounts of that evening diverge significantly. In particular, the discrepancy that ultimately gave rise to this appeal concerned Lisa's motivation for visiting defendant's home that evening.

On August 7, 2008, the day after the incident, Lisa told an officer of the East Providence Police Department that she went to defendant's house on the evening of the incident to inquire if Devina Rolle,[3] defendant's daughter, was home. In her statement to the police, Lisa explained that she had "been friends with Devina since the both of [them] attended middle school together." She further stated that "Devina lives on Anthony St[reet] * * * in a white house." According to Lisa's statement, on the evening of the incident, defendant invited her into his home and then attempted to have sex with her.

On August 15, 2008, defendant also made a statement to the East Providence police, in which he confirmed that Lisa had visited his home and admitted to touching Lisa on her hip, buttocks, and breasts. The defendant claimed, however, that Lisa came to his house looking for a sexual adventure. He stated that she told him that "she was eighteen years old and that she wanted to have some fun. She told me that she wanted to fool around." On November 18, 2008, the state filed an information charging defendant with one count of second-degree sexual assault.[4]

Immediately before the case opened to a jury on the morning of Tuesday, June 7, 2011, defense counsel made two motions concerning a new statement allegedly made by Lisa. Defense counsel explained to the trial justice that, based upon the discovery materials that the state had previously provided, counsel had expected Lisa to testify that she went to defendant's house on

---

[3] To avoid confusion, we refer to Ms. Rolle by her first name. We intend no disrespect.
[4] Under G.L. 1956 § 11-37-4, a person is guilty of second-degree sexual assault if he or she uses force or coercion to engage in sexual contact with another person.

- 2 -

August 6, 2008 to visit her friend Devina, who she believed resided with defendant. In anticipation of this testimony, defense counsel had caused Devina to be flown in from her current residence in the state of Georgia to testify at trial that she had not resided in Rhode Island since 2007 and that she and Lisa had never been friends. Defense counsel then learned during a discussion that took place in chambers on the previous morning that Lisa was now expected to testify that she went to defendant's house on the evening of the incident because she had heard that Devina was visiting from out of town. Defense counsel requested that the new statement be excluded or that the state provide her with additional information about the circumstances surrounding Lisa's decision to alter her statement. Specifically, counsel asked the prosecutor to disclose when he had learned that Lisa was changing her statement; who was present when the new statement was made; and who and/or what had prompted the change.

In response to defense counsel's motions, the prosecutor informed the trial justice that he and a victims' services advocate had met with Lisa on Friday, June 3, 2011 at the Attorney General's offices. The prosecutor explained that he was only recently assigned to the case. After the prosecutor concluded his response, defense counsel requested that the prosecutor also disclose when and from whom Lisa had allegedly heard that Devina was visiting from out of town. The prosecutor did not offer any additional information at that time. The trial justice denied defendant's motion to exclude the new statement but reserved ruling on the request for supplemental discovery.

When the trial commenced, the state presented Lisa as its first witness. During direct examination, the prosecutor questioned Lisa about why she went to defendant's home on the night of the incident. Lisa explained that she had "heard that Devina was in town so [she] decided to see if [Devina] was there and say hi." She could not remember who informed her that

- 3 -

Devina was visiting from out of town but averred that she was aware in 2008 that Devina was living in Georgia.

Thereafter, on cross-examination, defense counsel showed Lisa a copy of her statement from August 7, 2008 and pointed out that nowhere in the statement did it indicate that she had heard that Devina was visiting from out of town. Lisa answered, "I told the police that. They probably didn't write it down[.]"

At one point during cross-examination, the court recessed and defense counsel renewed her earlier motion for supplemental discovery. Defense counsel argued that, in order for her to effectively cross-examine Lisa, the state needed to disclose all of the circumstances surrounding Lisa's new statement, including everyone who was present at the meeting, if there were any notes from the meeting, and if Devina's testimony was discussed. The trial justice denied the motion, reasoning that the information that the state had provided earlier that morning was sufficient. After the jury returned, cross-examination concluded and the state completed redirect examination of Lisa.

When recross-examination began, defense counsel asked Lisa to review a portion of her statement from August 7, 2008. Lisa responded, "Before I read this, we revised this at my attorney's office. We went over it and we highlighted the parts that weren't accurate and I put in the rest of the information." Lisa then revealed that her father had also been present during her meeting with the prosecutor on Friday, June 3. Lisa indicated that her father had made some handwritten additions to her statement. Defense counsel asked Lisa if the prosecutor had spoken with her on Friday about Devina's expected testimony. Lisa explained that, during the meeting, she had spoken on the telephone with another prosecutor who had previously worked on her case. According to Lisa, the other prosecutor had informed her that Devina would be coming

from Georgia to Rhode Island to testify. She admitted that the other prosecutor specifically questioned her about why she went to defendant's house on August 6, 2008 if Devina had already moved to Georgia at that time. Lisa insisted, however, that the Friday meeting was not the first time that she had mentioned hearing that Devina was visiting from out of town. She maintained that she had given this information to the police when she first met with them the day after the incident.

The trial justice then allowed the prosecutor to conduct further redirect examination, during which the prosecutor had the following exchange with Lisa:

> "[Prosecutor]: * * * you made—actually, you didn't make the marks on the statement, right, your father did?
>
> "[Lisa]: Yes.
>
> "[Prosecutor]: All right. And I left the room?
>
> "[Lisa]: Yes.
>
> "[Prosecutor]: And I said, 'Read this over, tell me if you got any changes'; right?
>
> "[Lisa]: Correct.
>
> "[Defense Counsel]: Objection, Judge, leading.
>
> "The Court: Sustained.
>
> "[Prosecutor]: I'm just trying to—okay. If I could have this marked for identification, please."

At that point, the prosecutor produced a highlighted and annotated copy of Lisa's August 7, 2008 statement, prompting defense counsel to request a sidebar.

At the sidebar, defense counsel told the trial justice that she had never seen the document that the prosecutor was attempting to introduce. She emphasized that the information that the prosecutor was now using to lead the witness on re-redirect examination was exactly the kind of

information she had repeatedly asked him to disclose in her requests for supplemental discovery. In response, the prosecutor asserted that the document was the same statement that Lisa had given to the police on August 7, 2008 but with some inconsequential additions. He explained that he was "concerned about * * * the impression that I am hiding something in front of this jury. Now, what I would like to do is move this statement as a full exhibit because I have * * * absolutely nothing to hide." The trial justice allowed the document to be marked for identification but refused to allow the document to be admitted as a full exhibit. After the sidebar, the state presented one more witness before resting.

When the trial continued the following morning, defendant moved for a mistrial. In ruling on defendant's motion, the trial justice found that the prosecutor's failure to turn over the revised statement to defense counsel was a violation of Rule 16 of the Superior Court Rules of Criminal Procedure. The trial justice then went on to consider whether the discovery violation required him to grant a mistrial. According to the trial justice, the undisclosed information was central to defendant's case since its disclosure likely would have prompted defense counsel to adopt a different trial strategy. He emphasized that had the state been more forthcoming when defendant first requested the information, the nondisclosure could have been rectified by granting a continuance. The trial justice ultimately concluded that the only available remedy at that point in the proceedings was to declare a mistrial. Accordingly, the trial justice granted defendant's motion for a mistrial.

The defendant thereafter moved to dismiss the sexual-assault charge on double jeopardy grounds. At a hearing on defendant's motion on August 5, 2011, defense counsel argued that the prosecutor's attempt to submit the revised version of Lisa's statement into evidence was a deliberate effort to goad defendant into moving to pass the case. She emphasized that she had

repeatedly requested that the prosecutor disclose the circumstances under which Lisa changed her statement at the June 3 meeting. It was only after Lisa had unexpectedly revealed some of those circumstances on recross-examination that the prosecutor produced the revised statement. According to defense counsel, the momentum of the trial had swung in defendant's favor after recross-examination because the jury had begun to suspect that Lisa had altered her statement after learning of Devina's expected testimony. Defense counsel suggested that, as an experienced attorney for the state, the prosecutor knew that producing the revised statement could save his unraveling case by prompting defendant to request a mistrial.

In response, the prosecutor insisted that he did not turn over the revised statement because he did not believe the statement contained any "significant impeachment evidence." According to the prosecutor, the granting of the mistrial did not provide him with any tactical advantage since he had successfully completed his case-in-chief.

In a bench decision rendered that same day, the trial justice denied defendant's motion to dismiss. He explained that a mistrial granted at defendant's behest will only bar a retrial if the prosecutor engaged in extreme misconduct intended to goad defendant into moving to pass the case. The trial justice ultimately concluded that the prosecutor in Rolle's case did not have the specific intent to provoke Rolle into requesting a mistrial. In reaching this conclusion, the trial justice rejected defense counsel's suggestion that the prosecutor had attempted to abort an unraveling case. He reasoned that the prosecutor was "more overzealous than Machiavellian," since the withholding of the revised statement appeared to be no more than a good-faith error in judgment.[5] An order denying defendant's motion to dismiss entered on June 12, 2012.

---

[5] The trial justice ordered the Attorney General's office to reimburse the Public Defender's office for the cost of flying Devina Rolle from Georgia to Rhode Island to testify at trial.

The defendant filed a timely notice of appeal on August 18, 2011.[6] On September 24, 2013, defendant filed a motion to hold this appeal in abeyance because state's exhibit No. 5 for identification, Lisa's revised statement, had been irretrievably lost. The defendant argued that, without a copy of the revised statement, retrial would be impossible because he would be unable to adequately cross-examine his accuser. He therefore requested that this Court remand the matter for the limited purpose of allowing him to file another motion to dismiss in Superior Court. In an order entered on November 14, 2013, this Court denied Rolle's motion.

## II

### Standard of Review

In instances "where a defendant has moved for a mistrial and asserts on appeal that double jeopardy bars his retrial because of prosecutorial goading, we defer to the trial court's findings of fact." State v. O'Connor, 936 A.2d 216, 220 (R.I. 2007). "Whether prosecutorial misconduct was intended to goad the defendant into seeking a mistrial is a question of fact for the trial [justice] to decide." State v. Hull, 754 A.2d 84, 87 (R.I. 2000). On appeal, we "will not disturb the trial [justice]'s finding on that factual issue if it is supported by competent evidence." O'Connor, 936 A.2d at 220.

## III

### Discussion

At the threshold, we address defendant's suggestion that we need not reach the merits of this appeal. The defendant argues that, even if we conclude that double jeopardy does not preclude retrial, the loss of state's exhibit No. 5 for identification makes retrial impossible.

---

[6] Even though a final order did not enter until nearly ten months after defendant filed his notice of appeal, we consider defendant's premature notice of appeal timely. See Curtis v. State, 996 A.2d 601, 603 n.3 (R.I. 2010) ("premature notice of appeal [is] timely as long as a final judgment is entered thereafter").

According to defendant, his Sixth Amendment right to cross-examine his accuser will be compromised if he must retry the case without a copy of the revised statement. At this time, we are not convinced that retrial is impossible. We hold out hope that the exhibit may yet be located. In the event it is not, the possibility of a retrial in its absence is a question more appropriately answered, in the first instance, by the trial justice. We will therefore go on to address whether double jeopardy prohibits retrying defendant on the sexual-assault charge.

On appeal, defendant argues that the trial justice erred in denying his motion to dismiss the charge on double jeopardy grounds. In particular, he ascribes error to the trial justice's conclusion that the prosecutor lacked the specific intent to provoke a mistrial.

The prohibitions on double jeopardy contained in the United States and Rhode Island Constitutions ordinarily do not prevent the retrial of a criminal defendant when a mistrial has been granted at the defendant's behest.[7] State v. Casas, 792 A.2d 737, 739 (R.I. 2002). There is an exception, however, for instances where a prosecutor has engaged in extreme misconduct intended to provoke the defendant into moving to pass the case. Id. This exception is a narrow one. See State v. Beltre, 764 A.2d 190, 191 (R.I. 2000) (mem.). We have steadfastly adhered to the rule announced in Oregon v. Kennedy, 456 U.S. 667, 676 (1982), that a second trial is not forbidden unless the prosecutor's conduct was specifically intended to goad the defendant into moving for a mistrial. Casas, 792 A.2d at 739. "Mere prosecutorial error, therefore, although it may incite a mistrial, will not preclude retrial." O'Connor, 936 A.2d at 222. In rejecting any attempt to broaden this exception, we have explained that the Kennedy rule strikes "a careful balance between the right of a defendant to obtain a completion of his trial by the first tribunal assembled * * * and the societal interest in apprehending and punishing those who are guilty of

---

[7] Article 1, section 7 of the Rhode Island Constitution and the Fifth Amendment to the United States Constitution prohibit a defendant from twice being put in jeopardy for the same offense.

serious crimes." State v. Diaz, 521 A.2d 129, 133 (R.I. 1987); see Casas, 792 A.2d at 740; State v. McIntyre, 671 A.2d 806, 807 (R.I. 1996).

To infer the existence or nonexistence of intentional goading, the trial justice examines the objective facts and circumstances surrounding the prosecutor's misconduct. O'Connor, 936 A.2d at 223 n.6. Some of those relevant facts and circumstances include the timing of the misconduct, the experience of the prosecutor, and whether there was a legitimate reason for the misconduct. See, e.g., Casas, 792 A.2d at 740; Hull, 754 A.2d at 87; McIntyre, 671 A.2d at 807.

According to defendant, the objective facts and circumstances in this case compel the conclusion that the prosecutor's production of the revised statement was intended to provoke a mistrial. He relies heavily upon the prosecutor's experience and the timing of the misconduct, arguing that the prosecutor did not reveal the revised statement until after his case had begun to unravel.

The defendant is correct that one of the evils that the Kennedy rule seeks to guard against is "an unscrupulous prosecutor, faced with a rapidly derailing trial, conceivably * * * seek[ing] a premature end of the proceedings in hope of returning another day." Casas, 792 A.2d at 740; see also State v. Perez, 605 A.2d 1305, 1309 (R.I. 1992) (Retrial is prohibited when a prosecutor has engaged in "bad-faith conduct designed to afford the prosecution a more favorable opportunity to convict the defendant.") (quoting State v. Gordon, 508 A.2d 1339, 1345 (R.I. 1986)). After carefully reviewing the record, however, we agree with the trial justice's conclusion that no such evil was present in this case.

Here, the trial justice specifically took into consideration the prosecutor's experience and the fact that the prosecutor's attempt to introduce the revised statement came deep into the state's case. Notwithstanding these facts, he concluded that "it does not follow that [the prosecutor's]

- 10 -

misconduct was [the] voluntary derailing of a trial going badly." In reaching this conclusion, the trial justice acknowledged that "cross-examination * * * might have been considered a setback for the prosecution" but indicated that he "was not convinced that the [s]tate was by any means on the verge of losing this case."

Although defendant disagrees with the trial justice's finding that the prosecutor's case was not progressing badly, we conclude that this finding is amply supported by competent evidence of record. In finding that the state was not on the brink of losing the case, the trial justice characterized Lisa as a convincing and consistent witness for the state. Since we are "relegated to reading from a 'lifeless record,' [we] justifiably defer to trial justices who experience firsthand the delivery and demeanor of a witness's testimony." State v. Ferreira, 21 A.3d 355, 366 (R.I. 2011) (quoting State v. Guerrero, 996 A.2d 86, 90 (R.I. 2010)). At trial, Lisa repeatedly insisted that when she made her initial statement to the police, she mentioned hearing that Devina was visiting from out of town and speculated that the police officer had accidentally omitted that fact from the typed statement. We cannot fault the trial justice for crediting this testimony.

The defendant also quarrels with the trial justice's conclusion that the prosecutor's misconduct was the result of a good-faith error in judgment. He asserts that the prosecutor's repeated failure to disclose the circumstances of the June 3 meeting is highly suggestive of bad faith. Again, our review of the record convinces us that the trial justice appropriately considered this factor and made a well-supported finding.

The trial justice admonished the prosecutor for not being more forthcoming about the June 3 meeting and warned that he would not tolerate "trial[] by ambush." He ultimately found, however, that the prosecutor's withholding of the revised statement was an error of judgment.

The prosecutor explained that he believed—albeit erroneously—that he was not obligated under Rule 16 to turn over the revised statement to defense counsel because he deemed the changes to the statement to be largely inconsequential. If the prosecutor did not believe that his initial decision to withhold the document was a discovery violation, it is unlikely that he would believe that his later decision to produce the document would be grounds for a mistrial. In fact, the prosecutor offered a legitimate explanation for producing the statement. When he submitted the document into evidence, he explained that he wished to correct any impression the jurors might have that he was concealing the circumstances surrounding Lisa's changed statement. We are cognizant of the fact that the prosecutor's own lack of openness created the unfavorable impression that he was attempting to dispel. Nonetheless, it appears that the prosecutor was not seeking a more favorable opportunity to try his case in front of a new jury, but rather was seeking to redeem himself in the eyes of the original jurors. The trial justice correctly concluded that such overzealousness was grounds for a mistrial but would not preclude retrial.

After considering all of the defendant's arguments, we are satisfied that the trial justice performed a balanced and conscientious analysis of the objective facts and circumstances in this case. We conclude that there was sufficient evidence of record to support the trial justice's finding that those objective facts did not give rise to an inference of intentional goading. Accordingly, we uphold the trial justice's denial of the defendant's motion to dismiss the charge.

## IV

### Conclusion

For the reasons articulated in this opinion, we affirm the order of the Superior Court. The record in this case may be returned to that tribunal.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    State v. Jethro Rolle.

**CASE NO:**    No. 2012-12-C.A.
    (P2/08-3477A)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    February 18, 2014

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

    Associate Justice Brian P. Stern

**ATTORNEYS ON APPEAL:**

    For State:  Kimberly R. Ahern
          Department of Attorney General

    For Defendant:  Janice M. Weisfeld
          Office of the Public Defender